[No. H035158. Sixth Dist. May 24, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ROBERTS, Defendant and Appellant.

## COUNSEL

Kathleen M. Scheidel, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Nanette Winaker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUFFY, J.**—We address in this case whether the evidence was sufficient for the court to find that a prior felony conviction of second degree assault from

the State of Washington constituted a strike for purposes of imposing an enhanced punishment under the "Three Strikes" law. This question requires us in turn to determine the admissibility of (1) the transcript of the Washington prosecutor's recitation of the alleged facts underlying the crime, which was received under the adoptive admission exception to the hearsay rule, and (2) the transcripts of the unsworn statements of others made after the court accepted the guilty plea, admitted as constituting part of "the entire record of the conviction" which may be considered to prove a strike allegation. (*People v. Guerrero* (1988) 44 Cal.3d 343, 352 [243 Cal.Rptr. 688, 748 P.2d 1150] (*Guerrero*).)

Defendant Michael Roberts pleaded guilty to assault upon a peace officer, grand theft, and evading an officer. He also admitted the Washington conviction, but denied that it constituted a strike. The court found the strike allegation true and sentenced defendant—utilizing the prior strike to calculate the sentence—to an aggregate prison term of nine years four months.

We conclude that the court erred in admitting over defendant's objection the prosecutor's statement reciting the alleged facts relating to the Washington offense; this hearsay evidence was not admissible as an adoptive admission. We hold further that the unsworn statements of defendant, his attorney, and the victim made to the Washington court after it had accepted the guilty plea were also inadmissible to prove the strike. Although defendant's trial counsel failed to object to this evidence on the ground that it was not part of "the entire record of conviction," such omission constituted deficient performance of counsel which was prejudicial. We will therefore consider the otherwise forfeited evidentiary objection. After reviewing only the admissible evidence, we conclude that there was insufficient evidence to support the finding that the Washington conviction constituted a strike. We therefore reverse the judgment and remand the matter to the trial court for further proceedings.

## FACTUAL BACKGROUND[1]

On April 6, 2009, defendant and his girlfriend were in a white Chevrolet Nova at a Valero gas station in Santa Cruz. The car had been reported stolen on April 5. An employee of the Valero station saw defendant accessing the trunk of her car. As she walked toward her car, defendant saw her and fled the area in the Nova. The witness called the police and reported the license plate of the white car. She determined afterwards that she was missing a navigation system and her laptop computer.

---

[1] Because the current crimes are not germane to defendant's challenge on appeal, the facts underlying those offenses are presented in abbreviated form and are derived from the preliminary hearing transcript.

Defendant then drove to another Valero gas station in Santa Cruz. He and his girlfriend were spotted there by Detective David Perry of the Santa Cruz Police Department, who pulled up behind the Nova. Defendant initially cooperated with Detective Perry but drove away after Detective Perry instructed him to remain because he had learned that the Nova had been reported stolen. As defendant fled, the Nova struck Detective Perry, who rolled over the hood of the car. Defendant was pursued by peace officers through a residential neighborhood and on the freeway; he was ultimately apprehended in Scotts Valley.

## PROCEDURAL BACKGROUND

Defendant was charged by information filed May 1, 2009, with six felony offenses, namely, assault upon a peace officer (Pen. Code, § 245, subd. (c); count 1);[2] resisting an executive officer (§ 69; count 2); grand theft of personal property (§ 487, subd. (a); count 3); receiving stolen property (§ 496, subd. (a); count 4); unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 5); and evading an officer (Veh. Code, § 2800.2, subd. (a); count 6). He was also charged with two misdemeanors: resisting, obstructing or delaying a peace officer (§ 148, subd. (a); count 7), and hit-and-run driving (Veh. Code, § 20002, subd. (a); count 8). The information contained the further allegation that defendant had suffered one prior conviction within the meaning of section 666.5, subdivision (a), two prior convictions for which he had served prison terms (§ 667.5, subd. (b)), and two prior felony convictions from the State of Washington (second degree assault, and residential burglary) that constituted violent or serious felonies (§§ 667, subds. (b)–(i), 1170.12).

Defendant pleaded guilty to three of the felony counts (assault upon a peace officer [count 1], grand theft [count 3], and evading an officer [count 6]). He also admitted the fact of one of the Washington convictions alleged as a strike (i.e., the second degree assault conviction), but did not admit that the conviction constituted a strike. Pursuant to the People's motion, the court dismissed the remaining counts and struck the remaining allegations, including the second prior strike allegation.

In a later proceeding, the court heard evidence and determined that the second degree assault conviction from the State of Washington constituted a strike under California law. On January 7, 2010, after the court heard and denied defendant's motion to strike the prior strike allegation pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628], it sentenced defendant to eight years in prison in connection

---

[2] All further statutory references are to the Penal Code unless otherwise stated.

with the assault on a peace officer conviction (the midterm of four years for the offense, doubled because of his prior "strike" conviction, pursuant to §§ 667, subds. (b)–(i) & 1170.12), and a consecutive sentence of 16 months for the grand theft conviction (one-third of the midterm, doubled). The court also imposed a sentence of four years for the conviction of evading a peace officer (the midterm of two, doubled), but stayed imposition of that sentence pursuant to section 654. Defendant filed a timely notice of appeal.

## DISCUSSION

### I. Adjudication of Washington Conviction as a Strike

#### A. Background

The People offered two documents into evidence to establish that the Washington conviction was a strike: (1) the documents reflecting the conviction, including the information, statement of defendant's plea, and judgment[3] and (2) the transcript of the plea and sentencing hearing of July 17, 1999. The prosecution argued that the Washington conviction was a strike because the evidence showed that defendant had committed a felony in which he had personally inflicted great bodily injury, a strike under California law. (§ 1192.7, subd. (c)(8).)[4]

The documents reflecting the conviction did not provide details concerning the underlying offense. The information, reciting the language of the Washington statute for second degree assault, alleged that defendant "[o]n or about May 17, 1999, in the State of Washington, . . . intentionally assaulted Angela Roberts, and thereby recklessly inflicted substantial bodily harm." The form statement of defendant's guilty plea similarly mirrored the language of the statute. And the judgment simply recited that defendant had been convicted based on a guilty plea of second degree assault.

The People relied on the reporter's transcript of the plea and sentencing in support of their contention that the underlying offense involved defendant's personal infliction of great bodily injury. The matters relied on consisted of (1) the assistant district attorney's recital of the facts underlying the charge; (2) defendant's statement to the court after his plea of guilty; (3) the

---

[3] The police report of the incident was included in the exhibit. The prosecution at the hearing conceded that the police report was inadmissible to prove that the Washington conviction constituted a strike.

[4] "As used in this section, 'serious felony' means any of the following: [¶] . . . (8) any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . ." (§ 1192.7, subd. (c)(8).)

statement by defense counsel after her client's plea was taken; and (4) the statement of the victim, defendant's then wife.

Immediately after defendant entered his guilty plea, the prosecutor stated: "This . . . arrest was made by the Yakima Police Department on May 26, 1999, about 1:25 in the morning. . . . It was determined during the course of the investigation that . . . there was a physical confrontation during which Mr. Roberts assaulted Ms. Roberts by biting her lip and, Your Honor, this caused some permanent scarring and there was a portion of the lip that could not be reattached." Immediately after this recital, defense counsel said: "Judge, I have no other comment until the time of sentence." The court, based upon the prosecution's recital, then found that there was a factual basis for the guilty plea and accepted the plea.

Defendant responded to the court's inquiry as to whether he had anything to say before the imposition of the sentence: "Yes, I do, Your Honor. I'd like to apologize to Angela Roberts for what happened. . . . I do feel that in this case there is some doubts [*sic*] on myself and with her in the case. That's why I am pleading guilty. But I do understand that I did do bodily harm to her and I plan on pleading guilty for that and I'm sorry."

Defense counsel then stated: "My client has indicated to me as he just indicated to the Court that he does have a great deal of regret based upon the nature of this injury. It was very serious. . . . At the time of the incident in question he has maintained to me that they were involved in a physical fight and that she pulled out a deadly weapon, a letter opener, and he thought she was about to stab him with it. He, therefore, was trying to defend himself and was getting up biting at her. I don't think he was planning to bite her anywhere on the face area. However, he recognizes that where he did bite her was on her face. My understanding is it was on the lip. And there was quite a large injury inflicted. . . . [¶] . . . [¶] And again, I think this is a very unfortunate situation in which he never intended to cause this kind of harm. And, in fact, felt and still feels he was defending himself. But, on the other hand, is willing to come forward and take the blame. . . ."

The victim then provided the following statement to the court in connection with sentencing: "I don't feel that [defendant] should be released on work release. I feel he should serve his time. He did this in front of my children and I'm going to be scarred for the rest of my life. He was not defending himself. That's not the way it happened. . . ."

The court below concluded that the People had met their burden of establishing that the Washington conviction constituted a strike. In so holding, it relied on the statements from the transcript of the plea and sentencing

hearing for the Washington conviction of (1) the prosecutor, reciting the alleged facts supporting the charge; (2) defendant, indicating that he "did do bodily harm to [his then wife]"; (3) defense counsel, indicating that the injury to the victim was very serious; and (4) Ms. Roberts to the effect that she would be scarred for life.

### B. *Applicable Law*

■ The Legislature has indicated its intention under the Three Strikes law that any person convicted of a felony who has suffered one or more prior convictions of a violent or serious felony shall receive enhanced punishment. (§ 667, subd. (b).) In an instance—such as was claimed by the People here—where the person convicted of a felony has sustained one prior serious or violent felony, the punishment for the current offense is doubled. (§ 667, subd. (e)(1).) Section 1192.7, subdivision (c) contains a list of crimes that are serious felonies, which includes "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm." (§ 1192.7, subd. (c)(8).)

■ A conviction from another state may serve as the basis for an enhanced sentence under the Three Strikes law. As explained by our high court, "For an out-of-state conviction to render a criminal offender eligible for sentencing under the three strikes law (§§ 667, subds. (b)–(i), 1170.12), the foreign crime (1) must be such that, 'if committed in California, [it would be] punishable by imprisonment in the state prison' (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2)), and (2) must 'include[] all of the elements of the particular felony as defined in' section 1192.7[, subdivision] (c) (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2))." (*People v. Warner* (2006) 39 Cal.4th 548, 552–553 [47 Cal.Rptr.3d 1, 139 P.3d 475], fn. omitted.)

It is the prosecution's burden to prove beyond a reasonable doubt all of the elements supporting its allegation of a sentence enhancement. (*People v. Miles* (2008) 43 Cal.4th 1074, 1082 [77 Cal.Rptr.3d 270, 183 P.3d 1236].) "Where . . . the mere fact of conviction under a particular statute does not prove the offense was a serious felony, otherwise admissible evidence from the entire record of the conviction may be examined to resolve the issue. [Citations.] This rule applies equally to California convictions and to those from foreign jurisdictions. [Citations.]" (*Ibid.*) "The normal rules of hearsay generally apply to evidence admitted as part of the record of conviction to show the conduct underlying the conviction. [Citation.]" (*People v. Woodell* (1998) 17 Cal.4th 448, 458 [71 Cal.Rptr.2d 241, 950 P.2d 85].) In considering whether the prior conviction constitutes a strike, "the court may look to the entire record of the conviction to determine the substance of the prior foreign

conviction; but when the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the least offense punishable under the foreign law." (*Guerrero, supra*, 44 Cal.3d at p. 352.)

## C. *Discussion of Claim of Error*

Defendant contends that there was insufficient admissible evidence upon which the court concluded that the Washington conviction constituted a strike under California law. His argument is based upon the following components: (1) the prior offense, of itself, did not contain all of the essential elements of a serious felony as defined in section 1192.7, subdivision (c), because the Washington statute does not require the personal infliction of great bodily injury as an element of the crime of second degree assault; (2) the Washington prosecutor's recital of the facts underlying the offense was hearsay, and was not made admissible (as claimed by the People here) under the adoptive admission exception to the hearsay rule; and (3) the other items of evidence upon which the court relied—the statements of defendant, his attorney, and his then wife—were not part of the "record of the conviction" as described in *Guerrero, supra*, 44 Cal.3d at page 352, and therefore could not be considered in determining whether the Washington conviction was a strike. Defendant asserts further that, in the event it is determined that he forfeited the third argument due to trial counsel's failure to assert an objection to the evidence on this basis, he was deprived of effective assistance of counsel and the evidentiary objection should be considered on appeal in the first instance. We address these issues below.

## 1. *Elements of Washington offense*

The Washington crime of second degree assault of which defendant was convicted in 1999 required that the defendant have intentionally assaulted another person and thereby recklessly caused substantial bodily harm. (Wn. Rev. Code § 9A.36.021.)[5] The People argued below that this Washington crime was the equivalent of several other crimes under California law, namely, battery resulting in serious bodily injury (§ 243, subd. (d)), aggravated assault (§ 245, subd. (a)(1)), and willful infliction of corporal injury on a spouse (§ 273.5, subd. (a)). The People acknowledge that these California crimes in the context presented here are not listed as "serious crimes" under section 1192.7, subdivision (c) and therefore, of themselves, are not strikes. Nor do the People claim that the elements of the Washington

---

[5] Although the statute has been amended after 1999 in ways not relevant here, it provides in relevant part: "(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: [¶] (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm . . . ." (Wn. Rev. Code § 9A.36.021.)

offense, of themselves, are sufficient to constitute a strike. Rather, they argue that the evidence below showed that defendant personally inflicted great bodily injury upon his then wife, and the second degree assault therefore qualified as a serious felony under section 1192.7, subdivision (c)(8).

As provided in Revised Code of Washington section 9A.36.021, " '[s]ubstantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." (Wn. Rev. Code § 9A.04.110, subd. (4)(b); see also *State v. Atkinson* (2002) 113 Wn.App. 661, 667 [54 P.3d 702, 705].) The State of Washington makes a distinction between "substantial bodily harm" upon which a conviction of second degree assault may be based, and "great bodily harm" upon which a conviction of first degree assault may be based. (Wn. Rev. Code § 9A.36.011; see also *State v. Randoll* (2002) 111 Wn.App. 578 [45 P.3d 1137, 1140].)[6] In California, " 'great bodily injury' means a significant or substantial physical injury." (§ 12022.7, subd. (f); see also *People v. Escobar* (1992) 3 Cal.4th 740, 746 [12 Cal.Rptr.2d 586, 837 P.2d 1100]; CALCRIM No. 3160.) A battery resulting in the infliction of "serious bodily injury" is committed under section 243, subdivision (d) when the harm is one involving "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§ 243, subd. (f)(4).) And the high court has held that the term "serious bodily injury" under section 243, subdivision (d) is " 'essentially equivalent' " with the element of "great bodily injury" in other criminal statutes. (*People v. Burroughs* (1984) 35 Cal.3d 824, 831 [201 Cal.Rptr. 319, 678 P.2d 894], overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89 [96 Cal.Rptr.2d 451, 999 P.2d 675]; see also *People v. Moore* (1992) 10 Cal.App.4th 1868, 1871 [13 Cal.Rptr.2d 713] [holding "serious bodily injury" element of felony battery synonymous with "great bodily injury" requirement of "serious felony" under § 1192.7, subd. (c)(8)].)

■ The crime of second degree assault may be committed under Washington law without the defendant having personally inflicted the harm. (See *State v. Jesse T.* (2003) 118 Wn.App. 1048 [accomplice liability]; *State v.*

---

[6] The statute for first degree assault provides in relevant part as follows: "(1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: [¶] (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or [¶] . . . [¶] (c) Assaults another and inflicts great bodily harm. . . ." (Wn. Rev. Code § 9A.36.011.) " 'Great bodily harm' means bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ . . . ." (Wn. Rev. Code § 9A.04.110, subd. (4)(c).)

*Ferreira* (1993) 69 Wn.App. 465, 471–472 [850 P.2d 541, 544–545] [same].) Likewise, a defendant may be convicted of aggravated assault under section 245, subdivision (a)(1), or battery with serious bodily injury under section 243, subdivision (d), without having personally inflicted the harm. (See, e.g., *People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508 [50 Cal.Rptr.3d 161] [battery conviction under aider and abettor theory]; *People v. Alvarez* (2002) 95 Cal.App.4th 403, 405 [115 Cal.Rptr.2d 515] [aggravated assault conviction under aider and abettor theory].)

Accordingly, even were it true, as claimed by the People, that the crime of second degree assault under the Washington statute is the equivalent of the California felonies of battery resulting in serious bodily injury (§ 243, subd. (d)), aggravated assault (§ 245, subd. (a)(1)), or willful infliction of corporal injury on a spouse (§ 273.5, subd. (a)), the mere fact of defendant's conviction under Revised Code of Washington section 9A.36.021 would not constitute a strike. None of the California crimes claimed to be comparable to the second degree assault conviction constitutes a serious felony under section 1192.7. (See *People v. Feyrer* (2010) 48 Cal.4th 426, 442, fn. 8 [106 Cal.Rptr.3d 518, 226 P.3d 998] [aggravated assault not involving deadly weapon of itself a serious felony]; *People v. Bueno, supra*, 143 Cal.App.4th at p. 1508 [battery causing serious bodily injury not of itself a strike]; *People v. Chaffer* (2003) 111 Cal.App.4th 1037, 1045 [4 Cal.Rptr.3d 441] [infliction of great bodily injury not an element of willful infliction of corporal injury on spouse].) Therefore, since the Washington conviction of itself did not establish the strike allegation, we must now look to "the entire record of the conviction" examined by the trial court to determine whether it properly found that defendant's prior second degree assault conviction was a serious felony within the meaning of section 1192.7, subdivision (c)(8). (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065 [77 Cal.Rptr.3d 259, 183 P.3d 1226].)

### 2. *Prosecutor's recitation of facts*

In finding the Washington conviction a strike, the court relied in part on the recitation by the Washington prosecutor of the facts he alleged were the basis for the second degree battery charge. This statement—made after defendant's entry of a guilty plea but before the court accepted that plea—included a reference to defendant having assaulted the victim by biting her on the lip, the result of which was "some permanent scarring and there was a portion of the lip that could not be reattached." Neither defendant nor his counsel had commented in response to the prosecutor's recital. The People claimed below

**1120**

that the prosecutor's recitation of the facts was not hearsay and was admissible in support of the strike allegation.[7] Defendant's counsel objected on hearsay grounds, and the court allowed the evidence. On appeal, defendant argues that the prosecutor's factual recital, the truth of which defendant did not admit at the time of his guilty plea, could not be used against him in proving the strike allegation. The People respond that the prosecutor's factual statement, in the face of defendant's subsequent silence and defense counsel's statement that she "ha[d] no other comment until the time of the sentence," was admissible under the adoptive admission exception to the hearsay rule. (See Evid. Code, § 1221.)

Before addressing the hearsay claim, we determine whether the prosecutor's recitation of the alleged facts underlying the conviction is evidence of a type that a court may consider in adjudicating a strike allegation. As noted, the trial court may consider only the "record of the conviction" in determining whether the prior offense constituted a strike. (*Guerrero, supra,* 44 Cal.3d at p. 352.) Although the high court declined to identify those matters that are part of the record of conviction (*id.* at p. 356, fn. 1), it is plain that the prosecutor's comments here, occurring immediately before the court accepted defendant's guilty plea, were part of "the entire record of the conviction" under *Guerrero.* (See *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1101 [58 Cal.Rptr.3d 855] (*Thoma*) [record of conviction "includes . . . the defendant's guilty plea"]; *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350 [285 Cal.Rptr. 213] (*Abarca*) [same].)

We consider whether the prosecutor's statement was admissible under the adoptive admission exception to the hearsay rule. "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." (Evid. Code, § 1221.) As the Supreme Court has explained, " '[i]f a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt.' (*People v. Preston* (1973) 9 Cal.3d 308, 313–314 [107 Cal.Rptr. 300, 508 P.2d 300] . . . .) [¶] ' "[A] typical example of an adoptive admission is the accusatory statement

---

[7] It is plain that the transcript containing the recital by the Washington prosecutor of the alleged facts supporting the second degree assault charge was offered for the truth of the matters therein asserted and was therefore hearsay. The People have abandoned the meritless argument made below that the statement was not hearsay by not raising it here.

to a criminal defendant made by a person other than a police officer, and defendant's conduct of silence, or his words or equivocal and evasive replies in response. . . ." [Citation.]' [Citation.] . . . [Citation.] ' "When a person makes a statement in the presence of a party to an action under circumstances that would normally call for a response if the statement were untrue, the statement is admissible for the limited purpose of showing the party's reaction to it. [Citations.] His silence, evasion, or equivocation may be considered as a tacit admission of the statements made in his presence." [Citation.]' [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 661 [114 Cal.Rptr.3d 133, 237 P.3d 474], italics omitted; see also *People v. Davis* (2005) 36 Cal.4th 510, 535 [31 Cal.Rptr.3d 96, 115 P.3d 417]; CALCRIM No. 357.) Whether the statement constitutes an adoptive admission is "determined upon the facts and circumstances therein presented." (*People v. Spencer* (1947) 78 Cal.App.2d 652, 656 [178 P.2d 520] (*Spencer*), citing *People v. Simmons* (1946) 28 Cal.2d 699, 715 [172 P.2d 18] (*Simmons*).)

Here, immediately before the prosecutor's recital of the factual basis for the plea, the court asked defendant a number of questions about his plea. The court indicated that it had received defendant's plea form, observed that it included the notation that it was an *"Alford* Plea," and asked if he understood what that meant. Defendant responded in the affirmative, and the court explained: "An Alford Plea is a plea you're making where you deny admitting [*sic*] the facts but you're agreeing to plead guilty" because the defendant (1) is expecting a favorable recommendation from the prosecution, and (2) believes that if the case were tried, there is a likelihood that he would be convicted. Further, during the court's voir dire of defendant before accepting his plea, the court referred to what defendant had written on the plea form: "Your statement says that you do not feel that you are guilty but you understand the possibility exists that you would be found guilty by a jury and you prefer to take advantage of the State's recommendation. Is that a correct statement?" Defendant responded, "Yes, I do [*sic*]." Immediately after this exchange, defendant entered his plea of guilty, and the prosecutor then recited the alleged facts underlying the conviction.

■ The circumstances under which the prosecutor recited the alleged facts underlying the Washington offense did not "naturally call for some action or reply" by defendant. (*Spencer, supra*, 78 Cal.App.2d at p. 656; see also CALCRIM No. 357 [one element required for adoptive admission is that "defendant would, under all the circumstances, naturally have denied the statement if (he/she) thought it was not true"].) Immediately before the prosecutor's statement, defendant had presented a plea form indicating that he did not believe he was guilty of the offense but was electing to plead guilty, referencing *Alford.* (See *North Carolina v. Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160].) In *Alford*, the Supreme Court held, inter alia, that it was constitutionally permissible for the court, where a factual basis for

the charge is otherwise shown, to accept a defendant's plea of guilty along with his or her contradictory protestation of innocence. (*Id.* at pp. 37–38; see also *In re Alvernaz* (1992) 2 Cal.4th 924, 940–941, fn. 9 [8 Cal.Rptr.2d 713, 830 P.2d 747].) The court here explained to defendant that under an *Alford* plea, he was not admitting the underlying facts of the charged offense. " '[U]nder all of the circumstances shown, [the prosecutor's comments did not] call[] for a disclaimer . . . .' " (*Simmons, supra*, 28 Cal.2d at p. 713.)

The People rely on *People v. Sohal* (1997) 53 Cal.App.4th 911 [62 Cal.Rptr.2d 110] (*Sohal*). There, the claimed strike was based on the allegation that the defendant was previously convicted of " 'the crime of assault with a deadly weapon, a felony, in violation of Section 245[, subdivision ] (a)(1) of the Penal Code.' " (*Id.* at p. 914.) The defendant did not dispute that the prior conviction was for assault under section 245, subdivision (a)(1), but argued that it was for assault by means of force likely to produce great bodily injury, an offense that, of itself, is not a strike. (*Sohal*, at p. 914.) The prosecution introduced the reporter's transcript of the plea hearing. (*Ibid.*) During that hearing, the prosecutor—*before* the defendant entered his no contest plea—had recited the factual basis for the aggravated assault charge, including a statement that the prosecution had witnesses who would testify that the defendant entered a laundromat and personally struck the victim in the head with a metal pipe with enough force to cause great bodily injury. (*Ibid.*) The defendant's attorney indicated that the prosecution " 'can produce that evidence.' " (*Ibid.*) Immediately afterward, the defendant, in response to the court's inquiry concerning his plea, stated " 'No contest and I am guilty.' " (*Ibid.*)

The court affirmed the trial court's finding that the prior conviction was a strike. It reasoned: "[T]he court relied on the factual basis for the plea as stated by the prosecutor with which defense counsel agreed. The factual basis included the fact that defendant personally used a metal pipe. Defendant entered a plea to 'assault with a deadly weapon' not assault 'by means of force likely to produce great bodily injury' nor simply 'assault as defined in section 245, subdivision (a)(1).' Thus, defendant made an adoptive admission of the truth of the facts underlying the plea on the prior." (*Sohal, supra*, 53 Cal.App.4th at p. 916.)

Defendant here—in contrast to the defendant in *Sohal*, who agreed that he had committed an assault with a deadly weapon, a strike—made no admission that he had committed a strike offense. Further, the defendant in *Sohal* did not enter his plea until *after* the prosecution recited the underlying factual basis for the offense, thereby furnishing a reasonable basis for the court to infer that his silence in the face of the prosecutor's statement constituted an adoptive admission. Here, before the prosecutor spoke, defendant entered his

plea and the court clarified with him that the plea, under *Alford*, did not involve his admission of a factual basis for the charged offense. And in contrast to *Sohal*, where defense counsel specifically confirmed that the prosecution could produce evidence consistent with the recited factual basis for the charge, defendant's attorney made no such admission; instead, she simply said that she had no further comment until the time of sentencing. *Sohal* is therefore distinguishable on its facts and does not support the People's assertion here that defendant's silence in the face of the prosecution's recital of the alleged factual basis for the offense, under all of the circumstances, constituted an adoptive admission.[8]

The People's reliance on *Sohal* is also undermined by *People v. French* (2008) 43 Cal.4th 36 [73 Cal.Rptr.3d 605, 178 P.3d 1100] (*French*). In *French*, the People argued that defense counsel's agreement that the prosecution could produce witnesses that would support its recitation of a factual basis for the plea constituted the defendant's admission of the underlying facts for purposes of establishing an aggravating factor justifying the imposition of an upper term sentence. (*Id.* at p. 50.) There, after the prosecution recited what it claimed to be the underlying facts, "defense counsel stated, 'I believe the People have witnesses lined up for this trial that will support what the D.A. read in terms of the factual basis, and that's what they'll testify to.' " (*Id.* at p. 51.) The high court held that defense counsel's stipulation could not be construed as an admission on behalf of the defendant of the existence of aggravating circumstances warranting an upper term sentence. (*Ibid.*) Although the People correctly argue that *French* is factually distinguishable, the high court's reasoning in that case strongly suggests that a defendant who has pleaded guilty or no contest to an offense cannot be deemed to have admitted the prosecution's subsequent recitation of the facts underlying the offense, simply because he or she fails to deny that recitation either directly or through counsel.

Under these circumstances we conclude that defendant's failure to deny the prosecutor's recital of the alleged facts supporting the Washington conviction was not an adoptive admission of those facts. The trial court erred in admitting this evidence over defendant's hearsay objection.

---

[8] It is possible to read *Sohal* as holding that there was sufficient proof of the strike simply from the defendant's admission that he was " 'guilty' " of committing an assault with a deadly weapon (*Sohal, supra,* 53 Cal.App.4th at p. 914)—without consideration of the prosecution's recital of the factual basis for the offense and defendant's nonresponse thereto—since that variant of aggravated assault under section 245, subdivision (a)(1), constitutes a strike. (See § 1192.7, subd. (c)(31).) Moreover, to the extent the People also rely on *Abarca, supra,* 233 Cal.App.3d 1347, which was relied on by the court in *Sohal* (*Sohal,* at p. 916), that reliance is also misplaced. In *Abarca*, the defendant, at the time of his guilty plea of the offense claimed as a strike, expressly admitted that he had burglarized a residence (*Abarca,* at p. 1351), and such direct admission (under Evid. Code, § 1220) was the basis for the court's finding that the offense constituted a strike. No such express admission by defendant of a strike occurred here.

### 3. *Was other evidence part of "the record of conviction"?*

Defendant contends that his statement, the statement of his counsel, and the statement of the victim could not be considered as evidence in determining whether the Washington conviction constituted a strike. He asserts that since each of these three statements occurred after the court accepted his plea of guilty, none of this evidence may be considered because the evidence was not part of the "record of the conviction" as held in *Guerrero, supra,* 44 Cal.3d at page 352, and as explained further by the high court in *People v. Trujillo* (2006) 40 Cal.4th 165, 177 [51 Cal.Rptr.3d 718, 146 P.3d 1259] (*Trujillo*). Defendant argues further that if this contention is deemed forfeited because trial counsel failed to raise it below, he was prejudicially deprived of effective assistance of counsel and the argument should be considered here. We first address the merits of defendant's argument and then, having concluded that the evidence was inadmissible, consider his ineffective assistance claim.

#### a. *Admissibility of postplea statements*

In considering whether a prior conviction constitutes a strike, "the court may look to the entire record of the conviction to determine the substance of the prior foreign conviction . . . ." (*Guerrero, supra,* 44 Cal.3d at p. 352.) Although the court declined to delineate specifically "what items in the record of conviction are admissible and for what purpose" (*id.* at p. 356, fn. 1), it subsequently addressed whether a preliminary hearing transcript (*People v. Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184] (*Reed*)), and a defendant's statement in a probation report (*Trujillo, supra,* 40 Cal.4th 165) are considered part of the entire record of conviction that may be considered in determining whether the defendant's prior felony conviction constitutes a strike.

In *Reed, supra,* 13 Cal.4th at page 221, the court considered whether the prosecution could introduce excerpts of the victims' testimony from the preliminary hearing transcript as proof that the prior conviction of aggravated assault was a strike because it involved the defendant's personal use of a dangerous or deadly weapon. The high court concluded, inter alia, that the preliminary hearing transcript evidence constituted part of the "record of the conviction" within the meaning of *Guerrero, supra,* 44 Cal.3d at page 352. (*Reed,* at p. 223.) The court posed two distinct tests for determining whether an item of evidence constituted part of the "record of conviction" for purposes of proving a strike: (1) the broader, "technical[]" meaning, "as equivalent to the record on appeal [citation], or [(2)] more narrowly, as

referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*Ibid.*, citing *Abarca, supra*, 233 Cal.App.3d at p. 1350.) It did not decide which was the proper test for determining the admissibility of such evidence, instead holding that the preliminary hearing transcript excerpts met either test. (*Reed*, at p. 223.)

In *Trujillo, supra*, 40 Cal.4th 165, the information alleged that the defendant had a prior conviction of infliction of corporal injury under section 273.5, subdivision (a) (*Trujillo*, at p. 175), and the prosecution claimed that because the defendant personally used a dangerous or deadly weapon in the commission of the offense, it constituted a strike (*id.* at p. 170). The prosecution relied on the defendant's admission, recounted in the probation report, that he had personally used a knife in committing the offense. (*Id.* at p. 171.) Defense counsel responded that the defendant had been convicted only of violating section 273.5, subdivision (a); the personal use of a deadly and dangerous weapon allegation under section 12022, subdivision (b)(1), had been stricken; and the defendant's statements memorialized in the probation report were irrelevant. (*Trujillo*, at p. 171.) The trial court held that the corporal injury conviction was not a strike because the weapon allegation had been stricken pursuant to a plea bargain. (*Ibid.*) The Supreme Court held that the prior offense did not constitute a strike, "employ[ing] different reasoning than that utilized by the trial court." (*Id.* at p. 175.)

The high court noted that *People v. Monreal* (1997) 52 Cal.App.4th 670 [60 Cal.Rptr.2d 737], had held the probation report reflecting the defendant's admission that he had personally used a deadly or dangerous weapon admissible to establish that his prior aggravated assault conviction was a strike. (*Trujillo, supra*, 40 Cal.4th at pp. 178–179.) The *Monreal* court had concluded that the probation report was part of the record of conviction in both the broad sense of the report's being part of the record on appeal and under the narrower definition of its being a reliable reflection of the facts underlying the defendant's prior conviction. (*Trujillo*, at p. 178, citing *Monreal*, at pp. 675, 679.) The Supreme Court disagreed with *Monreal*, and disapproved of the decision (*Trujillo*, at p. 181, fn. 3), concluding: "[A] defendant's statements, made after a defendant's plea of guilty has been accepted, that appear in a probation officer's report prepared after the guilty plea has been accepted are not part of the record of the prior conviction, because such statements do not 'reflect[] the facts of the offense for which the defendant was convicted.' [Citation.] . . . [¶] A statement by the defendant recounted in a postconviction probation officer's report does not necessarily reflect the nature of the crime of which the defendant was convicted. In the present case, for example, the prosecution did not attempt to prove that

defendant used a knife and, instead, entered into a plea bargain in which it dismissed the allegation that defendant used a deadly or dangerous weapon and committed an assault with a deadly weapon. . . . [Citation.] [The d]efendant's admission recounted in the probation officer's report, therefore, does not describe the nature of the crime of which he was convicted and cannot be used to prove that the prior conviction was for a serious felony." (*Id.* at p. 179.) It thus appears that the high court in *Trujillo* determined that the narrower definition of "record of conviction" that it described in *Reed*— namely, "those record documents reliably reflecting the facts of the offense for which the defendant was convicted" (*Reed, supra*, 13 Cal.4th at p. 223)— applies in determining the admissibility of evidence to support a strike allegation.

In *Thoma, supra*, 150 Cal.App.4th 1096, the Second District Court of Appeal, Division Six, considered whether, in light of the holding in *Trujillo*, material in a probation report that the prosecution urged was admissible against the defendant as an adoptive admission under Evidence Code section 1221, could be used to prove a strike. At issue was whether the defendant's prior conviction for driving under the influence while committing an act forbidden by law and causing bodily injury (Veh. Code, § 23153, subd. (a)) was a strike because of the defendant's personal infliction of great bodily injury on a person, other than an accomplice. (*Thoma*, at p. 1100.) A single proceeding had taken place in which the defendant had pleaded guilty to the prior offense and the court had imposed the sentence. (*Ibid.*) After the defendant had entered his guilty plea and the court had imposed a prison sentence, the court indicated its intention to require the defendant to pay restitution to the victim, a pedestrian who had been struck in the crosswalk by the defendant while he was riding a motorcycle. (*Ibid.*) It detailed the victim's massive injuries (which it derived from the preconviction probation report). (*Ibid.*) Neither the defendant nor his counsel refuted these assertions. (*Ibid.*) The prosecution argued that this evidence, constituting an adoptive admission because of the defendant's failure to dispute it—together with preliminary hearing testimony as to a nurse's description of the victim's injuries to the police officer witness—established the great bodily injury element required for proof of the strike. (*Id.* at p. 1101.) The trial court found that the strike had been established without indicating whether it relied upon one or both pieces of evidence. (*Ibid.*)

■ The appellate court considered whether, in light of *Guerrero*, as explained further in *Trujillo*, the trial court erred by impliedly finding that the court's description of the victim's injuries at the sentencing hearing, in light of the defendant's silence, was admissible as an adoptive admission. (*Thoma, supra*, 150 Cal.App.4th at p. 1101.) The court acknowledged that *Trujillo* was

concerned with the admissibility of the defendant's statements in a probation report, while *Thoma* involved statements made at a sentencing hearing. It observed: "Although *Trujillo* concerned admissions in a postconviction probation report, the fair implication of *Trujillo* is that only admissions made prior to the acceptance of a defendant's guilty plea may be relied upon in determining whether a prior conviction qualifies as a strike. Admissions made after acceptance of the plea do 'not reflect the facts upon which [the defendant] was convicted.' [Citation.] Here the alleged adoptive admission was made after the acceptance of [the] appellant's guilty plea. Thus, the trial court was precluded from relying on the alleged adoptive admission in determining whether the 1995 prior conviction qualified as a strike." (*Thoma*, at p. 1102, quoting *Trujillo, supra*, 40 Cal.4th at p. 180.)

The holding in *Trujillo* compels the conclusion here that the postplea statements by defendant, his counsel, and his then wife were inadmissible to prove the strike. As the high court explained in finding inadmissible the defendant's statements to a probation officer: "The prosecution could not have compelled defendant to testify, and thus could not have used defendant's subsequent admission that he stabbed the victim to convict him. Once the court accepted his plea, defendant could admit to the probation officer having stabbed the victim without fear of prosecution . . . ." (*Trujillo, supra*, 40 Cal.4th at p. 179.) Likewise, here, the prosecution could not compel defendant to testify. Once the Washington court had accepted his guilty plea—a plea in which defendant expressly did *not* admit to the existence of a factual basis underlying the crime—he could speak freely, or not speak at all (see *Mitchell v. United States* (1999) 526 U.S. 314, 322–330 [143 L.Ed.2d 424, 119 S.Ct. 1307] [criminal defendant who has pleaded guilty may not be compelled to testify at sentencing; no adverse inference may be drawn from defendant's silence in court's determining facts relating to crime at sentencing]), without concern for being punished further for the crime to which he had pleaded guilty. And as was true in *Thoma*, the fact that the alleged admission took place at a combined plea and sentencing hearing—as opposed to *Trujillo*, where it occurred after the plea was accepted and while he was awaiting sentencing on a different date—is of no consequence. "Defendant's admission [after the court accepted his plea], therefore, does not describe the nature of the crime of which he was convicted and cannot be used to prove that the prior conviction was for a serious felony." (*Trujillo*, at p. 179.)

The statement by defendant's counsel was similarly inadmissible. If defendant could not be compelled to testify by the prosecution, certainly he could not be bound by statements made by his attorney concerning the underlying offense which defendant did not expressly adopt.

■ And under the holding of *Trujillo*, the unsworn statement by defendant's then wife was not part of the record of conviction. That statement also

occurred after the court had accepted defendant's guilty plea, timing which is critical in determining that it is not part of the record of conviction. (*Trujillo, supra,* 40 Cal.4th at p. 179; *Thoma, supra,* 150 Cal.App.4th at p. 1102.) A defendant is not entitled to the same constitutional protections for evidence submitted in connection with sentencing as apply to evidence presented at trial. (See *People v. Arbuckle* (1978) 22 Cal.3d 749, 754 [150 Cal.Rptr. 778, 587 P.2d 220] [no 6th Amend. right to cross-examination of witnesses at sentencing hearing].) "[A] sentencing court may consider a broad range of information in deciding whether to grant probation in a particular case. Due process does not require that a criminal defendant be afforded the same evidentiary protections at sentencing proceedings as exist at trial. [Citations.] A sentencing judge may consider responsible unsworn or out-of-court statements concerning the convicted person's life and characteristics. [Citations.]" (*People v. Lamb* (1999) 76 Cal.App.4th 664, 683 [90 Cal.Rptr.2d 565].) Thus, a sentencing court may receive a variety of evidence that might otherwise not be admissible at trial, while the normal rules of hearsay generally apply to evidence admitted to prove a strike (*People v. Woodell, supra,* 17 Cal.4th at p. 458). This circumstance also suggests that the victim's statement here offered in connection with sentencing is "not [one that] 'reflect[s] the facts of the offense for which the defendant was convicted.' " (*Trujillo,* at p. 179.) Moreover, the fact that the victim's statement, directed to the court regarding sentencing, was made at a combined plea and sentencing hearing, instead of at a date after defendant's guilty plea while he was either awaiting sentencing or at a separate sentencing hearing, does not change the fact that it occurred after the court had accepted defendant's plea.

Accordingly, we conclude under the authority of *Trujillo, supra,* 40 Cal.4th 165, and *Thoma, supra,* 150 Cal.App.4th 1096, that the postplea statements of defendant, his attorney, and his then wife were not part of the record of conviction and were inadmissible to establish the strike.

### b. *Ineffective assistance claim*

 Defendant argues that if his claim that the postplea statements were inadmissible because they were not part of "the entire record of the conviction" (*Guerrero, supra,* 44 Cal.3d at p. 352) is deemed forfeited because his trial counsel failed to make that objection, he was prejudicially deprived of effective assistance of counsel. In evaluating defendant's ineffective-assistance contention, we first identify familiar applicable legal principles. A criminal defendant has the right to the assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This constitutional right to counsel

entitles a defendant not simply to " 'bare assistance' " but rather to effective assistance. (*People v. Jones* (1991) 53 Cal.3d 1115, 1134 [282 Cal.Rptr. 465, 811 P.2d 757].) This constitutionally adequate assistance requires that the attorney diligently and actively participate in the complete preparation of the client's case, and investigate all defenses of law and fact. (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859], disapproved on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10 [25 Cal.Rptr.2d 867, 864 P.2d 40].)

A claim of ineffective assistance of counsel requires a showing (1) of performance that was deficient, and (2) prejudice resulting from such deficient performance. (*People v. Weaver* (2001) 26 Cal.4th 876, 961 [111 Cal.Rptr.2d 2, 29 P.3d 103].) The first element "requires a showing that 'counsel's representation fell below an objective standard of reasonableness.' [Citations.]" (*In re Marquez* (1992) 1 Cal.4th 584, 602–603 [3 Cal.Rptr.2d 727, 822 P.2d 435], quoting *Strickland v. Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 104 S.Ct. 2052].) " 'In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny . . .' and must 'view and assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act.' [Citation.]" (*People v. Scott* (1997) 15 Cal.4th 1188, 1212 [65 Cal.Rptr.2d 240, 939 P.2d 354].) Further, "[i]f the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*Ibid.*) The "prejudice" element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to defendant, i.e., a probability sufficient to undermine confidence in the outcome." (*In re Ross* (1995) 10 Cal.4th 184, 201 [40 Cal.Rptr.2d 544, 892 P.2d 1287].) The burden of establishing ineffective assistance is upon the party claiming it. (*People v. Pope, supra*, 23 Cal.3d at p. 425.)

Evidence Code section 353 requires that in reviewing a judgment or decision in which it is claimed that there was an erroneous admission of evidence, no reversal may occur unless there was a timely and specific objection to the evidence and that its admission brought about a miscarriage of justice.[9] Thus, where appellant has objected at trial to evidence on a certain ground, on appeal, he or she generally may not challenge the

---

[9] "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and [¶] (b) The court which passes upon the effect of the error or errors is of the opinion that the

admission of that evidence on a separate and distinct ground; such an argument is deemed forfeited. (*People v. Carey* (2007) 41 Cal.4th 109, 126 [59 Cal.Rptr.3d 172, 158 P.3d 743]; *People v. Demetrulias* (2006) 39 Cal.4th 1, 19–20 [45 Cal.Rptr.3d 407, 137 P.3d 229].)

Here, defendant's trial counsel objected to all statements in the transcript from the plea and sentencing hearing on hearsay grounds. He argued that defendant's silence in the face of the victim's statement did not render the evidence admissible as an adoptive admission. At no point did counsel argue that the postplea statements of defendant, his attorney, and his then wife were inadmissible because they were not part of "the entire record of the conviction" under *Guerrero, supra*, 44 Cal.3d at page 352. Plainly, this resulted in a forfeiture of the argument here. We therefore evaluate whether the failure of defendant's trial counsel to object on this ground constituted prejudicially deficient performance.

We will " 'reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 980 [17 Cal.Rptr.2d 122, 846 P.2d 704].) Although this means that ineffective assistance claims are considered with "deferential scrutiny" · (*People v. Ledesma* (1987) 43 Cal.3d 171, 216 [233 Cal.Rptr. 404, 729 P.2d 839]), " '[d]eference is not abdication' [citation]; it must never be used to insulate counsel's performance from meaningful scrutiny and thereby automatically validate challenged acts or omissions. Otherwise, the constitutional right to the effective assistance of counsel would be reduced to form without substance." (*Id.* at p. 217.)

Here, we can conceive of no legitimate reason why defendant's trial counsel would forgo objecting to the postplea statements on the ground that they were not part of "the entire record of the conviction" as required under *Guerrero, supra*, 44 Cal.3d at p. 352. The Supreme Court had decided *Trujillo, supra*, 40 Cal.4th 165, nearly three years prior to the hearing on the strike allegation. That decision, as we have discussed, explained further the type of evidence that may be included in "the entire record of conviction." Given that the statements here—like the defendant's statements to the probation officer in *Trujillo*—occurred *after* the court's acceptance of the guilty plea, and this circumstance was a point of emphasis by the *Trujillo* court (*id.* at p. 179; see also *Thoma, supra*, 150 Cal.App.4th at p. 1102), the argument that the statements were excludable under *Guerrero* and *Trujillo* was one that should have been made by competent counsel. Indeed, the People do not suggest a tactical reason that defendant's trial counsel may have had for not objecting

---

admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice." (Evid. Code, § 353.)

to the evidence under *Guerrero*. Instead, they simply assert that counsel did in fact object to the evidence, and that, in any event, because "the prosecutor's recitation of the factual basis for [defendant's] guilty plea was properly admitted," there was no prejudice. Moreover, since defendant's trial counsel *did* in fact object to the introduction of the statements, albeit on nonnmeritorious grounds, this fact underscores our conclusion that there could have been no tactical reason for counsel's failure to make a *meritorious* objection to the same evidence. (Cf. *People v. Asbury* (1985) 173 Cal.App.3d 362, 366 [218 Cal.Rptr. 902] [ineffective assistance found where trial counsel objected to felony murder instruction on invalid ground of insufficient evidence, but failed to object on meritorious basis of collateral estoppel].)

We are mindful of the general principle that "[t]he failure to impeach a witness or to object to evidence are matters which usually involve tactical decisions on counsel's part and seldom establish a counsel's incompetence." (*People v. Frierson* (1979) 25 Cal.3d 142, 158 [158 Cal.Rptr. 281, 599 P.2d 587]; see also *People v. Boyette* (2002) 29 Cal.4th 381, 433 [127 Cal.Rptr.2d 544, 58 P.3d 391].) Ineffective assistance claims based upon the failure to make evidentiary objections are routinely denied on the bases that the unasserted objection was nonmeritorious and would have been overruled (see, e.g., *People v. Majors* (1998) 18 Cal.4th 385, 403–404 [75 Cal.Rptr.2d 684, 956 P.2d 1137]; *People v. Cudjo* (1993) 6 Cal.4th 585, 616 [25 Cal.Rptr.2d 390, 863 P.2d 635]); the existence of a tactical reason for defense counsel's failure to assert the objection (see, e.g., *People v. Diaz* (1992) 3 Cal.4th 495, 560 [11 Cal.Rptr.2d 353, 834 P.2d 1171]; *People v. Kelly* (1992) 1 Cal.4th 495, 520–523 [3 Cal.Rptr.2d 677, 822 P.2d 385]); or the lack of a showing of an outcome prejudicial to the defendant as a result of the introduction of the evidence (see, e.g., *People v. Huggins* (2006) 38 Cal.4th 175, 248–249 [41 Cal.Rptr.3d 593, 131 P.3d 995]; *People v. Gray* (2005) 37 Cal.4th 168, 208 [33 Cal.Rptr.3d 451, 118 P.3d 496]). But cases finding ineffective assistance as a result of trial counsel's failure to object to evidence, while somewhat rare, do exist. (See, e.g., *In re Jones* (1996) 13 Cal.4th 552, 582–583 [54 Cal.Rptr.2d 52, 917 P.2d 1175]; *People v. Nation* (1980) 26 Cal.3d 169, 179–182 [161 Cal.Rptr. 299, 604 P.2d 1051].)

For example, in *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1520 [29 Cal.Rptr.3d 586], the prosecution introduced, without objection from defense counsel, impeachment evidence consisting of misdemeanor arrests and convictions of three defense witnesses. The prosecution emphasized this evidence in argument as a reason for the jury to disbelieve the witnesses' testimony. (*Id.* at pp. 1521–1522.) We noted in *Lopez* that, under *People v. Wheeler* (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418, 841 P.2d 938], while evidence

of misdemeanor conduct evidencing moral turpitude was admissible as impeachment evidence, evidence of misdemeanor convictions offered for impeachment was inadmissible hearsay. (*Lopez*, at p. 1522.) Accordingly, we concluded that the impeachment evidence was inadmissible and that defense counsel's performance was prejudicially deficient in failing to object to the evidence. (*Id.* at pp. 1523–1524.) In so holding we noted: "The Attorney General suggests no tactical reason for defense counsel to withhold objection to evidence of mere arrests or misdemeanor conduct not involving moral turpitude, and we cannot imagine one." (*Id.* at p. 1524; see also *People v. Valencia* (2006) 146 Cal.App.4th 92, 103–104 [52 Cal.Rptr.3d 649] [failure to object to hearsay testimony that established time period necessary for conviction of continuous sexual abuse was prejudicially ineffective assistance of counsel]; *In re Hernandez* (2006) 143 Cal.App.4th 459 [49 Cal.Rptr.3d 301] [defense counsel's failure to object to clearly inadmissible expert testimony at sanity phase of trial constituted ineffective assistance; Attorney General acknowledged there was no reasonable tactical justification for failing to object].)

This is a clear instance in which the objection had substantial merit; there was no tactical reason for defense counsel's failure to assert it; and, because the postplea statements were significant in supporting the strike finding, the introduction of the evidence was prejudicial to defendant. Accordingly, we conclude that the failure of defendant's trial counsel to object to the postplea statements on the ground that they were not part of the "entire record of the conviction" (*Guerrero, supra,* 44 Cal.3d at p. 352) constituted ineffective assistance of counsel that was prejudicial to defendant.

### 4. Conclusion

We have concluded that the court erred in admitting the statement of the prosecutor concerning the alleged facts of the Washington offense, and that the failure of defense counsel to object to the postplea statements of defendant, his attorney, and his then wife on the ground that such evidence was not a part of "the entire record of the conviction" constituted prejudicial ineffective assistance because such evidence, had the proper objection been made, was inadmissible. We therefore must determine whether the record presented in support of the strike allegation, absent the evidence erroneously admitted and the evidence that was not part of "the entire record of the conviction," was sufficient to support the trial court's finding that the Washington conviction constituted a strike.

In addressing a sufficiency-of-evidence challenge, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which

is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319–320 [61 L.Ed.2d 560, 99 S.Ct. 2781].) "In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses. [Citation.]" (*People v. Little* (2004) 115 Cal.App.4th 766, 771 [9 Cal.Rptr.3d 446], citing *People v. Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].)

▮ Here, from the admissible evidence presented below, it can be determined only that defendant was convicted of second-degree assault. The circumstances surrounding the conviction do not disclose the necessary elements urged by the People, namely, that in the commission of the offense, "defendant personally inflict[ed] great bodily injury on any person, other than an accomplice," required for a finding that the crime constituted a "serious felony" under section 1192.7, subdivision (c)(8). Under *Guerrero*, when the record of the entire conviction "does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the least offense punishable under the foreign law." (*Guerrero, supra*, 44 Cal.3d at p. 355; see also *People v. Miles, supra*, 43 Cal.4th at p. 1083.) Based upon that presumption, from the admissible evidence presented, the Washington conviction did not constitute a strike.

Our conclusion that there was insufficient admissible evidence from the record to support the strike finding notwithstanding, retrial of the strike allegation is not precluded. (See *People v. Anderson* (2009) 47 Cal.4th 92, 102 [97 Cal.Rptr.3d 77, 211 P.3d 584]; *People v. Barragan* (2004) 32 Cal.4th 236 [9 Cal.Rptr.3d 76, 83 P.3d 480].) The prosecution may present additional evidence that is included within "the entire record of the conviction" to establish that the Washington conviction constituted a strike. (See *People v. Ulloa* (2009) 175 Cal.App.4th 405, 413 [95 Cal.Rptr.3d 905]; *People v. Jenkins* (2006) 140 Cal.App.4th 805, 816 [44 Cal.Rptr.3d 788].)

## DISPOSITION

The judgment is reversed based upon our conclusion that there was insufficient admissible evidence to support the court's finding that the Washington conviction constituted a serious felony under section 1192.7, subdivision (c)(8). The prosecution, at its election, may retry the strike allegation by presenting additional evidence that is included within "the entire

record of the conviction." Regardless of whether the prosecution elects to retry the strike allegation, the court shall resentence defendant; if the prosecution does not elect to retry the strike allegation or does not prove the strike upon such retrial, the court shall resentence defendant without the strike.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied June 14, 2011.