Filed 10/15/14  P. v. Roberts CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIE ROBERTS,<br><br>    Defendant and Appellant. | D065216, D065217<br><br><br>(Super. Ct. No. JCF31378,<br>  JCF27850) |

APPEAL from a judgment of the Superior Court of Imperial County, Donal B. Donnelly, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Willie Roberts of simple assault (Pen. Code,[1] § 240) as a lesser included offense of assault with a deadly weapon (§ 245 subd. (a)(1); count 1), and battery with serious bodily injury (§ 243, subd. (d); count 3). The jury found true the allegation that Roberts personally used a knife in the commission of count 3. The jury found Roberts not guilty of making criminal threats (§ 422, count 2). Roberts moved unsuccessfully for a new trial on the basis of newly discovered evidence. In a bifurcated court trial, the trial court found true the allegation that Roberts had a prior strike conviction in 2006 for assault with a deadly weapon. The court sentenced Roberts to prison for seven years, consisting of three years for the battery—doubled to six years based on the prior strike—plus a one-year enhancement for Roberts's personal use of a knife. The trial court also revoked Roberts's probation on a 2011 commercial burglary conviction by plea[2] and imposed a concurrent term of three years for that conviction.

On appeal,[3] Roberts contends the trial court abused its discretion by denying his new trial motion. He further contends the trial court erred by doubling his sentence under the Three Strikes law (§ 667, subd. (e)(1); § 1170.12, subd. (c)(1)), contending insufficient evidence supports the trial court's finding that Roberts's 2006 conviction for assault with a deadly weapon was a strike offense. We affirm.

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] Roberts erroneously asserts in his opening brief that he was on probation for a 2013 conviction by plea to assault with a deadly weapon.

[3] Roberts filed separate notices of appeal in the instant criminal case and in the probation violation proceedings (D065217). We consolidated both appeals on our own motion under the instant case number.

FACTUAL AND PROCEDURAL BACKGROUND

*The Prosecution Evidence*

As of July 2013, Timothy Baxter, a longtime alcoholic with a criminal history, had been homeless for about 23 years. On July 20, Baxter was living in a tent on a river bank in Brawley, California, where he had been living for about two to four weeks. Inside his tent he had four handmade dolls he found while collecting cans. He left his campsite in the evening and returned at approximately 8:00 p.m. Near his tent, Baxter saw a bicycle he did not recognize with two of his dolls tied to its handlebars. He became angry, retrieved his dolls, and threw the bike into some nearby bushes. Baxter started a campfire and waited for the bike's owner to return.

Shortly thereafter, Roberts approached Baxter's campsite. Roberts asked, "Baxter, where's my bike?" Baxter responded, "That was your bike with my dolls on the handlebars?" Roberts replied, "Yeah." Baxter said, "It's in the bushes, dude. You stole my dolls, right?" Roberts explained he wanted to buy the dolls and had gone looking to find out who owned them. Roberts asked to see Baxter's other dolls because he wanted to buy them too. When Baxter turned toward his tent to get the dolls, Roberts, who is African-American, said "I'm going to kill you, white boy," and punched Baxter in the jaw, breaking it. Baxter fell to the ground, and when he tried to get up, Roberts swung at him again. Baxter saw a knife in Roberts's hand. Roberts said, "Fuck you, white boy," then ran away. Baxter followed Roberts, but stopped when he realized he had been cut and was bleeding.

Baxter had a deep cut on his wrist from when he blocked Roberts's swing, a cut on his face, and a cut on his chest. He bandaged and super glued the wound on his wrist, but it still bled. He did not go to the hospital because he thought someone would call the police and he did not "want to be labeled a snitch."

The next day, Baxter went to the home of his friend, Steve Stone. Stone and his girlfriend helped Baxter close his remaining wounds with super glue. Baxter denied telling Stone or Stone's girlfriend that he confronted Roberts with a knife.

Baxter reported the incident to the police the following day because he was hearing on the street that "it wasn't over" between him and Roberts and he was concerned "one of us was going to kill each other." The police took Baxter to the emergency room for treatment. Medical personnel observed Baxter suffered a deep laceration on his left wrist, a laceration on his bicep, and superficial lacerations on his face and chest. Medical personnel would certainly have sutured the wrist wound, and might have sutured the bicep wound, if Baxter had sought treatment sooner. None of the other wounds would have required sutures. A CT scan revealed Baxter's jaw was broken.

Police arrested Roberts on July 31, 2013. He was not carrying a weapon at the time. After being *Mirandized*,[4] Roberts admitted to punching Baxter in the face for throwing his bicycle in the bushes and to asking Baxter "if he wanted some more." Roberts denied cutting Baxter and said Baxter pulled a knife on him. Roberts added, if

---

[4]     *Miranda v. Arizona* (1966) 384 U.S. 436.

he had stabbed Baxter he "would have made sure to do the job right and would have left him dead."

*The Defense Evidence*

Chris Coffman was a friend of Roberts and had known him for approximately 10 years. Coffman knew who Baxter was from seeing him around town. Coffman also knew Stone.

Coffman testified he was at Stone's home the day Baxter visited with fresh wounds. Coffman testified Baxter described to him the incident involving Roberts.[5] Baxter said Roberts stole a doll from him, so he threw Roberts's bike into the woods and waited for Roberts to return. Baxter said he had a knife out and was going to stab Roberts. When Roberts returned to the camp, Roberts said he had a buyer for the dolls. When Baxter turned around to get the other dolls, Roberts punched him. Coffman testified Baxter did not say anything about Roberts threatening him, and Coffman never knew Roberts to carry a knife.

Coffman also testified regarding a conversation he later had with Roberts. Roberts said he punched Baxter in the head because Baxter had a knife. Roberts denied stabbing Baxter. Coffman testified he described this conversation to a defense investigator. Coffman told the investigator he never told anyone that Baxter said he got cut by falling on a knife; Coffman merely assumed that was how Baxter got cut.

---

[5] Baxter testified he did not know Coffman, did not recall telling anyone other than Stone and his girlfriend what happened, and no one other than Stone and his girlfriend were at Stone's home when Baxter's wounds were treated.

*The Prosecution Rebuttal*

The prosecution called defense investigator Shannon Fox as a rebuttal witness. Fox testified that during an interview of Coffman, Coffman never mentioned he had a conversation with Roberts about the incident, never mentioned Roberts denied stabbing Baxter, and never mentioned Roberts said he punched Baxter because Baxter had a knife. Coffman told Fox that Baxter said that Roberts entered the tent and, when Baxter stood up, Roberts hit him several times, knocking him down. Coffman also told Fox that Baxter said he got cut by falling on the knife.

*Roberts's New Trial Motion*

After the jury returned its verdict, Roberts moved for a new trial on the basis of newly discovered evidence. Roberts's counsel, Gerald B. Warren, filed a supporting declaration in which he stated a woman approached him in the courtroom during a recess on the last day of trial. The woman said she was a friend of Roberts and had a friend who knew both Roberts and Baxter. That friend told the woman she had previously spoken with Baxter and that Baxter told a different version of events. Warren told the woman it was the last day of trial and asked her to speak to the prosecutor. Before that could occur, counsel were called into chambers; when they returned to the courtroom, the woman was gone. Warren did not know the woman's name and did not mention the woman to the prosecutor. Warren stated in his declaration that he did not believe he could avoid resting his case based on what the woman had told him, or that it was grounds on which the court would grant a continuance. Later that day, Warren learned the woman's name was Julie Frey and obtained a phone number for her.

6

On October 31, 2013, after the verdicts were read, Warren met outside the courthouse with a woman named Vicky Taylor, whom he had met during a pretrial conference. Taylor had been helpful in keeping track of witness Coffman and providing clothes for Roberts to wear during trial. When Warren mentioned the possibility of a new trial motion based on information about Frey's friend, Taylor mentioned for the first time that she thought she also knew some people to whom Baxter had told a version of events that differed from his testimony. Taylor offered to arrange a meeting among those people and a defense investigator.

In further support of his motion for new trial, Roberts filed a declaration from defense investigator Robert Weekes. Frey introduced Weekes to her friend, Cindy Aguilar. Weekes described in his declaration a conversation Aguilar told Weekes she had with Baxter. Baxter told Aguilar he had "gotten into it with" Roberts after confronting Roberts for stealing his dolls. Baxter told Aguilar he "had a 'shank' but [Roberts] sucker-punched him and ran away like a little bitch." Baxter told Aguilar he wanted a rematch with Roberts, but Aguilar told Baxter "he needs to leave it alone, he's too old for that." Baxter did not tell Aguilar that Roberts had cut him.

Weekes also obtained a declaration from Ranee Owens, a homeless woman. Owens declared she knew Baxter and encountered him five days after the incident. Baxter asked Owens if she knew what had happened between Baxter and Roberts; Owens responded she did not. Baxter then told Owens the following version of events: Baxter found Roberts's bike with two of Baxter's dolls tied to it; Baxter took the dolls off the bike and threw the bike into the bushes; Baxter got his knife and waited for Roberts to

7

return; when Roberts returned, Baxter confronted him and they had a heated argument; when they calmed down, Baxter turned to gather his other dolls and Roberts "cracked him in the jaw," causing Baxter to fall on his knife. Owens observed a cut on Baxter's left wrist and scratches on his face and chest.

The trial court denied Roberts's new trial motion on three grounds. First, although the court found the evidence was newly discovered, the court was not satisfied that "a reasonable and diligent effort was made to locate and interview all of the people who may have been told various statements about the event." Second, the court found the evidence was merely cumulative of other evidence introduced at trial to impeach Baxter's testimony—evidence that consumed "a significant amount of the trial . . . ." The trial court elaborated on why the new evidence was cumulative: "[T]his isn't a case in which these two new individuals, Ms. Owens and Ms. Aguilar, would be ready to come forward with independent percipient evidence. Instead, they would merely be called to offer cumulative impeachment of the victim by way of prior inconsistent statements." Third, the trial court was not convinced the newly discovered evidence established a "reasonable chance, more than an abstract possibility, that a different result would occur upon retrial." The court was "satisfied that the jury fully and fairly evaluated [Baxter's] testimony and that the defense had a full and fair and ample opportunity to confront and cross-examine [Baxter] and his testimony." Therefore, the trial court was "not convinced" a different result would have occurred "if there were a retrial that simply provided two additional witnesses to give impeachment testimony on [Baxter's] prior inconsistent statements."

Roberts timely appealed the trial court's denial of his new trial motion and doubling of his sentence under the Three Strikes law.

DISCUSSION

I

*THE TRIAL COURT DID NOT ABUSE ITS DISCRETION
BY DENYING ROBERTS'S NEW TRIAL MOTION*

Roberts contends the trial court erred by denying his new trial motion. He challenges each of the three bases on which the court denied the motion—lack of diligence, cumulativeness, and materiality. We conclude the trial court did not abuse its discretion with regard to the latter two bases, and, therefore, we need not address the first.

A

Section 1181, subdivision (8) provides for a new trial in a criminal case "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial." (§ 1181, subd. (8).) "In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: ' "1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." ' " *People v. Delgado* (1993) 5 Cal.4th 312, 328.) "A new trial on the ground of newly discovered evidence is not granted where the only value of the newly discovered testimony is as

9

impeaching evidence' or to contradict a witness of the opposing party." (*People v. Hall* (2010) 187 Cal.App.4th 282, 299.)

" ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' " (*People v. Delgado*, *supra*, 5 Cal.4th at p. 328.) " ' "[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background." ' " (*Ibid.*)

B

Roberts argues his counsel exercised reasonable diligence but, nevertheless, did not discover the additional witnesses until after trial. As a fallback, Roberts argues that if his counsel did not act diligently, "then the issue becomes one of ineffective assistance of counsel." The People counter that Roberts's counsel did not act diligently, and urge us to address Roberts's ineffective assistance of counsel claim by deeming it nonprejudicial on the basis that the trial court denied the motion on the additional bases of cumulativeness and lack of materiality. Because we must address those two additional bases regardless of how we would have ruled on the issue of diligence, we need not address the merits of the diligence issue and will instead address only the additional bases.

Roberts contends the trial court abused its discretion by deeming the newly discovered witnesses cumulative. He asserts Baxter's "uncorroborated testimony was the prosecution's entire case." By granting a new trial with the new evidence, Roberts argues he could further impeach Baxter's testimony and further bolster Coffman's. The trial court, however, noted on the record that the defense cross-examined Baxter about

10

inconsistencies in his statements, and used police officers as witnesses to impeach him. Coffman's testimony also impeached Baxter by presenting the inconsistent version of events Baxter provided him and by presenting Roberts's own version of events, which portrayed Baxter as the knife-wielding aggressor. Baxter was further impeached by evidence of his alcoholism, criminal history, and tattoos of a swastika and skinheads. Based on the foregoing, we conclude the trial court did not abuse its discretion by concluding testimony from Owens and Aguilar[6] would merely have been cumulative impeachment evidence.

Roberts also contends the trial court erred by concluding "there is no reasonable chance that a different result would be probable" if the case were retried with the newly discovered evidence. We objectively assess the probability of a different result by determining "based on all the evidence, old and new, whether any second trier of fact, court or jury, would probably reach a different result." (*People v. Huskins* (1966) 245 Cal.App.2d 859, 862.) Applying that objective standard here, we find no abuse of discretion. The trial court reasoned Baxter "was already substantially impeached," as evidenced by the jury's not guilty verdict on the charge of assault with a deadly weapon,

---

6    We further note the trial court was advised of Aguilar's proposed testimony via investigator Weekes's declaration, not Aguilar's own, in violation of section 1181, subdivision (8)'s admonition that a new trial motion be supported by "the affidavits of the witnesses by whom such evidence is expected to be given . . . ." (See *People v. Beeler* (1995) 9 Cal.4th 953, 1005.) Contrary to Roberts's assertion, the People sufficiently raised, and the trial court acknowledged, the hearsay nature of Weekes's declaration with respect to Aguilar.

which "shows [the jury] had an opportunity to fully evaluate the victim's testimony and choose what portion they believe . . . ."

In short, the trial court did not abuse its discretion by denying Roberts's motion for new trial.

II

*THE TRIAL COURT DID NOT ERR BY DOUBLING ROBERTS'S SENTENCE*

Under the Three Strikes law, a single prior strike serves to double the sentence for a new felony conviction. (§ 667, subd. (e)(1); § 1170.12, subd. (c)(1).) Roberts contends the trial court erred by doubling his three-year sentence on count 3 to six years because (1) the *current conviction* on count 3 does not constitute a serious or violent offense for purposes of the Three Strikes law; and (2) there was insufficient evidence to establish that his *2006 conviction* under section 245, subdivision (a)(1) was a serious or violent offense for purposes of the Three Strikes law. We disagree.

Roberts first argues the trial court erred by doubling his sentence because his current felony conviction on count 3 is not a "*violent* felony" for purposes of the Three Strikes law. (Italics added.) Roberts is mistaken. "By its very terms, *any felony* triggers a longer sentence under the Three Strikes law as long as the defendant has sustained at least one strike." (*People v. Strong* (2001) 87 Cal.App.4th 328, 344, italics added; § 667, subd. (e)(1); § 1170.12, subd. (c)(1).) Roberts appears to rely on Proposition 36, the Three Strikes Reform Act of 2012, which generally requires that a *third strike* conviction be for a serious or violent felony before a court may impose a longer sentence. (See generally *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1292.)

12

However, because Roberts's sentence was not doubled because his current conviction was a third strike offense, Roberts's apparent reliance on Proposition 36 is misplaced. Therefore, the nature of Roberts's current felony conviction did not immunize him from a doubled sentence under the Three Strikes law.

Roberts's second argument, that his 2006 conviction under section 245, subdivision (a)(1) was not a serious or violent felony, arises from an ambiguity in how that subdivision read at the time of Roberts's prior conviction. Then, the subdivision "included both [1] assault with a deadly weapon and [2] assault with force likely to produce great bodily injury."[7] (*People v. Fox*, *supra*, 224 Cal.App.4th at p. 429, fn. 3.) This two-pronged approach created ambiguities in sentencing because the deadly weapon prong constituted a serious offense for purposes of the Three Strikes law, while the great bodily injury prong did not necessarily. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065.) Roberts sought to exploit that ambiguity here.

Roberts moved in limine to dismiss the allegation that his 2006 conviction under section 245, subdivision (a)(1) constituted a strike. He argued below, as he does on appeal, that the record was ambiguous regarding whether he pled guilty to the deadly weapon prong (a strike) or the great bodily injury prong (not necessarily a strike). Roberts argued his plea entry form indicated he pled guilty to "Assault with deadly

---

[7] In 2011, the Legislature amended section 245 by deleting from subdivision (a)(1) the phrase "or by any means of force likely to produce great bodily injury" and adding a new subdivision (a)(4) that defined the offense of assault by force likely to produce great bodily injury. (Stats. 2011, ch. 183, § 1; *People v. Fox* (2014) 224 Cal.App.4th 424, 429, fn. 3.)

13

weapon/force likely to produce GBI,"[8] and the court minutes from that proceeding indicated he pled guilty to " 'Assault with a Deadly Weapon, by Means Likely to Produce GBI, a felony, in violation of Section 245(a)(1) PC.' "  He argued these records were insufficient to establish whether he had pled guilty to the strike or nonstrike prong of section 245, subdivision (a)(1).  (See, e.g., *People v. Delgado*, *supra*, 43 Cal.4th at p. 1070, fn. 4 [disapproving *People v. Luna* (2003) 113 Cal.App.4th 395 to the extent it implies "that an abstract of judgment that contains ambiguous references to both prongs of the statute can nonetheless be sufficient evidence of a serious felony"].)  Given the ambiguity, Roberts argued the court was bound by the "least adjudicated elements" test to treat the prior conviction as a nonstrike offense.

The People argued below, as they do on appeal, that although Roberts's plea documents are ambiguous, other court records resolve that ambiguity.  For example, the minute order from the sentencing proceeding unambiguously states the court found the offense to be "COUNT 2.  ASSAULT:  DEADLY WEAPON OTHER THAN FIREARM."  Similarly, the court's judgment and commitment confirms Roberts pled guilty to "COUNT 2 ASSAULT:  DEADLY WEAPON OTHER THAN FIREARM."  Count 2 of the People's complaint initially alleges, ambiguously, that Roberts committed "ASSAULT WITH DEADLY WEAPON, BY MEANS LIKELY TO PRODUCE GBI," but resolves that ambiguity by specifying Roberts committed an "assault upon [the victim] with a deadly weapon, to wit, BASEBALL BAT, and by means of force likely to

---

8      The plea form actually states Roberts pled guilty to "Assault w/Deadly Weapon likely to produce great bodily injury.  245(a)(1) PC."

14

produce great bodily injury."  The complaint further alleged, " 'NOTICE:  The above offense is a serious felony within the meaning of . . . section 1192.7[, subdivision] (c).' "

The trial court denied Roberts's motion.  The court acknowledged the plea form and related minutes were ambiguous, but "remain[ed] convinced by proof beyond a reasonable doubt that the probation and sentencing minutes, as well as the judgment and commitment minutes . . . are not ambiguous and are clear."  The court stated it "considered" the complaint but did not "rely" on it in resolving the ambiguity.  Based on the evidence before it, the trial court made "a finding and determination that the alleged prior conviction is a proper prior strike conviction for purposes of the enhancement alleged in this case."

On appeal, Roberts argues the People's evidence was insufficient to resolve the ambiguity beyond a reasonable doubt.  He appears to suggest, without citation to authority, that the trial court could only have resolved the ambiguity by resorting to the "most complete and reliable record of the guilty plea":  the reporter's transcript of the plea proceedings, which was unavailable because the court reporter had moved out of state in the intervening years.  We are not persuaded.

We review the trial court's finding that Roberts's prior conviction constituted a strike for substantial evidence.  (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1132.)  Substantial evidence is that which is "reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*Id.* at p. 1133.)

Substantial evidence supports the trial court's determination that Roberts's 2006 conviction under section 245, subdivision (a)(1) related to the deadly weapon prong. Although the plea form and related minutes did create an ambiguity, the record evidence the trial court relied on—the minute order from the sentencing proceeding and the judgment and commitment—effectively resolve that ambiguity. In addition, the complaint, which the trial court considered but did not rely on, further resolves any ambiguity by specifically alleging Roberts committed an assault with a deadly weapon and by identifying that weapon as a baseball bat. Moreover, the complaint expressly notified Roberts the offense is a serious offense for purposes of the Three Strikes law. (See, e.g., *People v. Delgado*, *supra*, 43 Cal.4th at p. 1072 [encouraging "accusatory pleadings" to "specify that a charged offense involves facts making the offense a serious felony" so that "the serious felony nature of the offense will become an explicit part of the record of conviction, leaving no room for confusion if and when the issue becomes relevant to the sentence for a subsequent felony."].) Although the reporter's transcript of the plea proceedings would also have been probative, its absence does not negate the existence of the other abundant substantial evidence discussed above.

In sum, substantial evidence supports the trial court's conclusion that Roberts pled guilty to the deadly weapon prong of section 245, subdivision (a)(1). Accordingly, the trial court did not err by doubling Roberts's sentence on the basis of that prior strike conviction.

16

DISPOSITION

The judgment is affirmed.


                                              HUFFMAN, Acting P. J.

WE CONCUR:


McINTYRE, J.


O'ROURKE, J.

17