Filed 7/12/22  P. v. Miller CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B311704 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA081639) |
| v. | |
| STEVEN RICHARD MILLER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Reversed and remanded with directions.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Steven Richard Miller was charged with murder in connection with the strangulation death of his estranged wife, Blaza Rene Miller (Blaza).[1] He pled guilty to second degree murder and admitted several prior convictions as part of a negotiated plea agreement. Appellant and his counsel stipulated that the preliminary hearing transcript, police report, and probation report contained a factual basis for appellant's plea.

Appellant subsequently filed a petition for resentencing under Penal Code section 1170.95.[2] Appellant requested appointment of counsel and attested in a declaration that the prosecution proceeded under the felony murder rule or natural and probable consequences doctrine, and he could not now be convicted of murder because he did not act with the intent to kill.

The trial court summarily denied the petition in a written order without appointing counsel or receiving further briefing. It determined the allegations in appellant's petition were too conclusory and lacking in basis to warrant an evidentiary hearing. It further concluded that the information, preliminary hearing transcript, and sentencing hearing transcript showed that appellant was not prosecuted under the felony murder rule or natural and probable consequences doctrine, and the only plausible theory of liability was that he intended to kill Blaza. The court also cited inculpatory remarks appellant made at his sentencing hearing.

Appellant contends the court erred by failing to appoint counsel, engaging in improper factfinding, and relying on the

---

[1]     We refer to Blaza by her first name to avoid confusion. No disrespect is intended.

[2]     All further statutory references are to the Penal Code unless otherwise indicated.

2

remarks he made at the sentencing hearing.  He further contends the errors were not harmless because it is reasonably probable that the petition would not have been summarily denied if he had been appointed counsel.  We agree and reverse.  As respondent Attorney General concedes, the court erred by failing to appoint counsel when appellant requested it in his facially sufficient petition.  The error was not harmless because the record of conviction, which does not include appellant's remarks at sentencing, does not foreclose relief as a matter of law.  We remand the case to the trial court to issue an order to show cause pursuant to section 1170.95, subdivision (c) and hold a hearing in accordance with section 1170.95, subdivision (d)(3).

## BACKGROUND

### I.    Preliminary Hearing

The court held a preliminary hearing on January 13 and 17, 2012.  The following facts were adduced.[3]

According to Blaza's fiancé, Randall Badger, Blaza lived in an extended-stay hotel in Torrance with her dog and worked as an escort.  Badger often paid for the hotel but lived elsewhere.

---

[3]    Appellant "submits there are no facts in the record of the conviction based upon appellant's no contest plea" pursuant to *People v. West* (1970) 3 Cal.3d 578 (*West*), under which a defendant does not admit a factual basis for a plea. (See *People v. Rauen* (2011) 201 Cal.App.4th 421, 425.)  However, the reporter's transcript of the plea hearing shows that appellant pled guilty, not no contest.  The minute order documenting the hearing mentions *West*, but that appears to have been in error, as it also contains a nunc pro tunc correction striking reference to a plea of nolo contendre and replacing it with "plea of guilty entered."  At appellant's sentencing hearing, both the prosecutor and appellant's counsel corrected the court when it erroneously stated the plea was no contest.

Blaza was still married to appellant but had "put a divorce decree together." She told Badger she feared "violence" from appellant due to his previous conviction for spousal abuse.

Although they had not seen one another in person since February 2011 due to transportation difficulties, Badger and Blaza spoke at least once a day. During a conversation shortly before her death, Blaza complained to Badger about appellant "eating all of her food and spending her money and not bringing anything in."

Badger called Blaza for the last time on June 18, 2011. Blaza told Badger she was "in the middle of something" and could not talk. Badger was concerned about the tone of Blaza's voice and called her back several times, but she did not answer. A few days later, detectives came to Badger's residence and informed him Blaza was dead. Badger provided DNA samples for the detectives. One of the detectives testified that he examined Badger's cell phone and saw that Badger's last phone call with Blaza occurred around 2:21 p.m. on June 18, 2011.

Appellant's parole agent, Shelbie Brooks, testified that appellant was on parole in June 2011. His parole conditions required him to wear a GPS ankle monitor and meet with Brooks at least two times per month. Their last meeting occurred on June 15, 2011; Brooks did not observe any noticeable injuries on appellant at that time. On June 18, 2011, Brooks received a "master tamper alert" indicating that appellant's ankle monitor had been tampered with or removed. After Brooks unsuccessfully attempted to reach appellant on his cell phone, she searched the monitoring database and learned that the tampering occurred at 5:52 p.m. and the monitor was currently stationary near the interchange of the 110 and 405 freeways. A crime scene analyst

4

for the monitoring database company later determined that the device had been within 100 meters of Blaza's hotel at 4:45 p.m. on June 18, 2011.

On June 20, 2011, a hotel employee went to Blaza's room after phone calls to her room went unanswered. After his knocks at the door also went unanswered, the employee opened the door and saw an unresponsive person in the bed. He called his manager, Saul Perez, to the room. Perez testified the dog was gone when he entered the room, but Blaza was lying in bed with a blanket over her face. When she did not respond to his verbal calls, Perez tapped Blaza's leg and realized it was cold. Perez exited the room, locked the door, and called 911. Perez testified that he had seen appellant "frequent" Blaza's room and had last seen him there "[p]ossibly a week before the incident."

Torrance police officer Garrett Brinkley responded to the hotel around 3:10 p.m. on June 20, 2011. He was told by a firefighter already on the scene that a woman had been found lying in bed with a sheet and pillow on top of her. The woman had blood on her face and a cord around her neck.

Senior criminalist Eucen Fu also responded to the hotel on June 20, 2011. He observed another senior criminalist, John Bockrath, swab the ends of a white cord that was wrapped around Blaza's neck before he personally collected samples from her wrists, hands, fingernails, hair, and a sexual assault kit.

Senior deputy medical examiner Dr. James Ribe performed an autopsy of Blaza on June 22, 2011. He observed numerous external injuries, including a bruise on her left forehead, a stab wound through her right cheek, a narrow ligature mark all the way around her neck, bruises on the backs of both hands, a small cut on the back of her left pinky finger, an abrasion on the back of

5

her right wrist, and a number of small bruises on her legs.  Ribe opined that the injuries on Blaza's hands were "characteristic of injuries sustained when a weaker assault victim attempts to ward off an assailant who is striking blows at them."  Ribe also observed internal injuries, including blunt force trauma to the brain and hemorrhagic fractures of the thyroid cartilage.  Ribe opined that homicidal strangulation was the cause of death; the fatal injury to Blaza's neck could not have been self-inflicted.  He further opined that Blaza died at most a minute or two after her thyroid cartilage was fractured, probably about one to two days before her body was found.

Torrance detective Dennis Brady met appellant at the Fresno County Sheriff's Department on June 22, 2011.  Appellant had what appeared to be "fairly new" scratch marks on his neck and forearms.  Brady obtained DNA samples from appellant.

Senior criminalist John Bockrath performed DNA analysis of the evidence collected in the case on June 23, 2011.  Samples from the neck ligature and Blaza's fingernails contained a mixture of Blaza's and appellant's DNA. Badger was excluded as a contributor.

At the conclusion of the preliminary hearing, the prosecution rested without making any argument.  Appellant did not offer any affirmative defense, but moved to dismiss the charge due to insufficient evidence.  The trial court denied the motion to dismiss and found sufficient cause to believe appellant committed murder.

## II.    Information

On February 2, 2012, the District Attorney of the County of Los Angeles filed an information charging appellant with a single count of murder (§ 187, subd. (a)) in connection with Blaza's

6

death. The charge did not specify a degree but alleged that appellant "did unlawfully, and with malice aforethought murder BLAZA MILLER, a human being." The information further alleged that appellant suffered a prior strike and serious felony conviction (§§ 667, subds. (a)-(i), 1170.12, subd. (a)) and six prison priors (§ 667.5, subd. (b)).

### III.    Plea and Sentence

On March 7, 2013, appellant completed a felony guilty plea form indicating an intent to plead guilty to second degree murder and admit five priors in exchange for the strike being stricken and a negotiated sentence totaling 24 years to life.

The court held a plea hearing the same day. The prosecutor engaged appellant in a colloquy about the charge, allegations, and his rights. She also noted that his maximum exposure on the charges and allegations, if he "were convicted of first degree murder," would be 59 years to life. Appellant stated he understood. After appellant pled guilty and admitted the priors, his counsel and the prosecution concurred in the plea and stipulated "that a factual basis exists in the police reports, preliminary hearing transcript, and probation reports." The court accepted appellant's plea as voluntarily, knowingly, and intelligently made and found a factual basis in the stipulated documents.

The court held a sentencing hearing on April 18, 2013. Blaza's mother and sister made statements, and several of her friends and family members submitted letters to the court. Appellant also made a statement, in which he apologized to Blaza's family and friends, expressed "the deepest feeling of shame and regret for taking the life of someone so special to us all," and stated that "nothing . . . excuses the fact that I took a

7

life."  The court sentenced appellant to the negotiated sentence of 15 years to life for the murder, plus an additional consecutive nine years for the priors.  Appellant did not appeal his plea, conviction, or sentence.

## IV. Section 1170.95 Proceedings

### A. Petition

Appellant filed a section 1170.95 petition on March 2, 2021. He requested counsel and attached a declaration attesting that the prosecution "asserted the theory of 'felony murder' or 'natural and probable consequences doctrine' to charge [him] with second degree murder," and he could no longer be convicted of murder because he "'did not act with the intent to kill' at the time of the offense."

### B. Ruling

The court denied the petition by written order on March 5, 2021, without appointing counsel.  The court concluded that its review of "the felony information and the official sentencing and preliminary hearing transcripts contained in the court file" demonstrated that appellant was not prosecuted under either the felony murder theory or the natural and probable consequences doctrine.  The court further stated that appellant's "conclusory allegations in his petition that he did not intend to kill and that the prosecution asserted the theory of 'felony murder or natural and probable consequences doctrine' made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing."  It added, "The only plausible theory of liability is that Petitioner intended to kill Blaza Rene Miller," and quoted the remarks appellant made during the sentencing hearing.

Appellant timely appealed.

8

## DISCUSSION

### I.  Governing Law

The Legislature enacted Senate Bill 1437 (SB 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd.  (e); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) SB 1437 accomplished this task by adding three provisions to the Penal Code.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

First, to amend the natural and probable consequences doctrine, SB 1437 added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder.  (§ 188, subd. (a)(3); accord, *Gentile, supra*, 10 Cal.5th at pp. 842-843.)  Second, to amend the felony murder rule, SB 1437 added section 189, subdivision (e), which provides that a participant in the perpetration or attempted perpetration of certain felonies in which a death occurs may be liable for murder only if (1) the person was the actual killer; (2) the person was not the actual killer "but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree"; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e).)

Finally, SB 1437 added section 1170.95, which permits individuals who were convicted of felony murder or murder under

9

a natural and probable consequences theory, but who could not be convicted of murder following SB 1437, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include a declaration by the petitioner that he or she is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and whether the petitioner requests appointment of counsel. (§ 1170.95, subd. (b)(1).)

If the petition satisfies those requirements, and the petitioner has requested counsel, the court must appoint counsel. (§ 1170.95, subd. (b)(3).) The prosecutor is also required to file a response to the petition, and the petitioner may then file a reply. (§ 1170.95, subd. (c).) The court then holds a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Ibid.*; see also *Lewis, supra,* 11 Cal.5th at pp. 960-986.)

"[T]he 'prima facie bar was intentionally . . . set very low.'" (*Lewis, supra,* 11 Cal.5th at 972.) "Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."'" (*Id.* at 971, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 978 (*Drayton*).) In assessing the petition at the prima facie stage, the court must not engage in '"factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, at 972, quoting *Drayton*, at 980.) If the petitioner's allegations are facially sufficient to state a

claim for relief, the court may refrain from issuing an order to show cause "[o]nly where the record of conviction contains facts conclusively refuting the allegations in the petition," thereby establishing the petitioner's ineligibility for resentencing "as a matter of law." (*People v. Flores* (2022) 76 Cal.App.5th 974, 991-992 (*Flores*).)  The court's authority to make factual determinations without conducting an evidentiary hearing "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime) . . . ." (*Drayton*, at 980.)

If the court finds the petitioner has made a prima facie showing, it must issue an order to show cause and hold an evidentiary hearing.  (§ 1170.95, subds. (c)-(d).)  At that hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder ... under California law as amended by [SB 1437]." (§ 1170.95, subd. (d)(3).)  If the prosecution fails to meet this burden, the court must vacate the murder conviction and resentence the petitioner on any remaining counts.  (*Ibid.*)

## II.    Analysis

Appellant and respondent agree the trial court erred by failing to appoint counsel for appellant.  Such error is assessed under the *Watson* harmless error test. (*Lewis, supra*, 11 Cal.5th at pp. 973-974.)  "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have

11

been summarily denied without an evidentiary hearing.""" (*Id.* at p. 974.) Appellant asserts he has carried that burden here, because the record of conviction, examined without premature factfinding, does not foreclose relief as a matter of law. Respondent disagrees, contending the record of conviction establishes that "appellant pleaded guilty to murder based on a theory he was the actual killer."

A section 1170.95 petitioner convicted of murder based on a plea is ineligible for resentencing "if the record establishes, as a matter of law, that (1) the complaint, information, or indictment did not allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) the petitioner was not convicted under such theory; or (3) the petitioner could presently be convicted of murder or attempted murder under the law as amended by Senate Bill No. 1437." (*Flores*, *supra*, 76 Cal.App.5th at p. 987.) None of these criteria is necessarily established by the record of conviction.

The information charged appellant generically with murder.[4] It did not specify or exclude any particular theory of murder, and thus did not prevent the prosecution from proceeding under the felony murder rule or natural and probable consequences doctrine, neither of which needs to be separately pled. (*People v. Rivera* (2021) 62 Cal.App.5th 217, 233-234, review dismissed Jan. 19, 2022, S268405 (*Rivera*); see also *People v. Eynon* (2021) 68 Cal.App.5th 967, 977-978.) Respondent points out that the information did not charge appellant with any other

---

[4] The felony complaint, which is part of the record on appeal but was not mentioned in the trial court's order, contains an identical charge.

crime. However, it is not necessary to charge a target offense for purposes of the natural and probable consequences doctrine (see *People v. Prettyman* (1996) 14 Cal.4th 248, 266-267) or an underlying felony for purposes of the felony murder rule (*People v. Silva* (2001) 25 Cal.4th 345, 371).

Respondent also asserts "there is no mention in the record of any underlying felony that could have been used as the basis for felony murder liability, or any target offense or conduct that could have formed the basis of liability under the natural and probable consequences doctrine." Respondent suggests the case is analogous in this regard to *People v. Perez* (2020) 54 Cal.App.5th 896, 907 review granted Dec. 9, 2020, S265254 (*Perez*), in which witnesses at the preliminary hearing testified they saw the defendant kill his wife by "repeatedly and forcefully striking her in the head with a hammer." The court in *Perez* held that this evidence "shows Perez pleaded no contest to the murder based on a theory he was the actual killer." (*Ibid.*) Here, however, no evidence adduced at the preliminary hearing necessarily foreclosed the possibility that appellant was not the actual killer or that Blaza was killed during the commission or intended commission of another crime. Circumstantial evidence certainly placed appellant at the scene, and strongly suggested he killed Blaza. Even if appellant's stipulation to the transcript as a basis of his guilty plea admitted the truth of all the evidence (see *id.* at pp. 905-906), it did not necessarily establish he was the perpetrator or acted with express malice. His counsel's isolated reference to a potential future self-defense argument likewise did not foreclose an implied malice theory.

As appellant observes, evidence adduced at the preliminary hearing could support a theory that appellant entered Blaza's

room to take her food, or her dog, or even to assault her, and others may have had access to her room. The prosecution gave no explicit indication of which theory or theories it was pursuing. To the contrary, while making a relevance objection to a question about Blaza's occupation, the prosecution kept its options open by asserting, "this is *largely* a DNA case, and *as far as we know*, the DNA evidence only points to one person, but *it might lend* [*sic*] to a DNA issue, if that's what counsel is going after." The trial court's conclusion that "[t]he only plausible theory of liability is that Petitioner intended to kill Blaza Rene Miller" required it to make inferences, credibility determinations, and factual findings not proper at the prima facie stage of the proceedings.

Respondent alternatively contends that appellant's statements at the sentencing hearing "demonstrate, without the need for factfinding, that he was the actual killer." We agree with appellant, however, that these statements, which were not made under oath, are not part of the record of conviction. In *People v. Trujillo* (2006) 40 Cal.4th 165, 179, the Supreme Court held that "a defendant's statements, made after a defendant's plea of guilty has been accepted, that appear in a probation officer's report prepared after the guilty plea has been accepted are not part of the record of the prior conviction, because such statements do not 'reflect[ ] the facts of the offense for which the defendant was convicted.'" (See also *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1127-1128 ["under the holding of *Trujillo*, the unsworn statement by defendant's then-wife was not part of the record of conviction. That statement also occurred after the court had accepted defendant's guilty plea, timing which is critical in determining that it is not part of the record of conviction"].) Appellant's statements here are analogous. Even if they are not,

the court erred in assessing and crediting their credibility at the prima facie stage.

Because the record does not show as a matter of law that appellant was ineligible for resentencing, we must remand the case to the trial court to issue an order to show cause under section 1170.95, subdivision (c) and hold an evidentiary hearing pursuant to section 1170.95, subdivision (d)(3). At the evidentiary hearing, the trial court will not be compelled to credit appellant's allegations. (See *Lewis*, *supra*, 11 Cal.5th at 971 [court should not reject petitioner's factual allegations on credibility grounds "'without first conducting an evidentiary hearing'"].) We express no opinion regarding appellant's entitlement to relief.

## DISPOSITION

The order denying appellant's section 1170.95 petition is reversed. On remand, the trial court is directed to issue an order to show cause and hold an evidentiary hearing to determine whether appellant is entitled to section 1170.95 relief. At that hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that [appellant] is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.                    WILLHITE, J.

15