Filed 11/16/23  P. v. Ocegueda CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>DONACIANO ROCHA OCEGUEDA,<br><br>      Defendant and Appellant. | F085716<br><br>(Super. Ct. No. 1255508)<br><br><br>**OPINION** |

## THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Martin Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

## INTRODUCTION

In 2012, defendant Donaciano Rocha Ocegueda pleaded no contest to voluntary manslaughter (Pen. Code, § 192, subd. (a)) and possession of a firearm by a felon (former § 12021, subd. (a)).  (Undesignated statutory references are to the Penal Code.)  The parties stipulated for purposes of the plea that the factual basis was set forth in the preliminary hearing transcripts and that the "essential allegation" was that defendant shot and killed the victim.  In 2022, defendant petitioned for relief from his manslaughter conviction under section 1172.6.  Referring to the preliminary hearing transcript which the parties stipulated provided the factual basis for defendant's plea, the court concluded defendant was ineligible for relief because he was the actual killer.  Defendant now appeals from the denial of his section 1172.6 petition for resentencing.

On appeal, defendant contends the court erred in relying upon the preliminary hearing transcript at the prima facie stage to conclude he was ineligible for relief as the actual killer.

We affirm.

## FACTUAL BACKGROUND

In January 2009, a complaint was filed against defendant (the sole defendant) alleging he committed:  murder (§ 187, subd. (a); count I) with allegations the murder was intentional, deliberate, and premeditated, and defendant was a principal in the commission of the murder and, during the offense, at least one principal intentionally and personally discharged and personally used a firearm and proximately caused great bodily injury to a person who was not an accomplice (§ 12022.53, subds. (d) & (e)(1)); assault with a firearm (§ 245, subd. (a)(2); count II); possession of a firearm while a felon (former § 12021, subd. (a)(1); count III); destruction and/or concealment of evidence (§ 135; count IV).  The prosecutor moved to strike and the court struck count II after the presentation of evidence at the preliminary hearing.  The court also did not hold defendant to answer to count IV.

2.

*Preliminary Hearing Transcript*

At the preliminary hearing, Cynthia A. testified she knew defendant from school, and they had previously dated. On January 5, 2009, Cynthia's friend Ricky Conway, came by Cynthia's house. Cynthia left to get beer and got a ride to her friend Monica's house. Defendant was at Monica's house and Cynthia told him Conway wanted to speak to him. Defendant stated he was going to go talk to Conway; they were friends. Cynthia walked away from Monica's house and defendant picked her up. They went back to Cynthia's house.

Cynthia and defendant got out of the car; defendant's arm "was stiff." Conway was sitting on Cynthia's front porch. "[I]t was really quiet." Cynthia "got scared." She went in the house. She did not hear arguing or talking. She went back out to the front porch and saw Conway on his knees in the grass. Then, she heard a gun go off. Defendant was close to Conway, at the gate facing him. No one else was around defendant when he was within two or three feet of Conway. Cynthia did not see anything in defendant's hands. Cynthia remembered seeing "the devil's eyes," referring to evil in defendant's eyes, and "the car's red [brake] lights going around the corner." After defendant took off, Cynthia went to see if Conway was okay. She went to touch his right cheek area and blood "gushed out" onto her hand. She did not see any injuries; Conway was looking up at her. Cynthia ran into the house and called 911. On cross-examination, Cynthia admitted she had been drinking that night and used methamphetamine, though she later stated she was probably only under the influence of alcohol.

Detective Eric Beffa was present during the autopsy of Conway's body. Conway had a large gunshot wound to his upper left collar bone area and bruising to both of his sides and left chest. Several small pellets and two pieces of plastic that appeared to be from a shotgun shell were collected from Conway's chest cavity. Beffa opined the presence of such evidence indicated Conway was most likely shot with a shotgun.

3.

Additionally, the spread pattern of shotgun pellets suggested Conway was shot "at a relatively close distance."

Police detective Craig Grogan testified he was involved in the investigation into Conway's death. He reported to a location on Crows Landing Road where he spoke with a deputy who had just conducted a traffic stop on defendant; Juan Nila was also in the vehicle. The deputy ran the vehicle's plates and it came back with the address "where a homicide occurred." There were two shotgun shells in the car on the passenger floorboard near the seat.

Grogan interviewed Nila at the police department and Nila reported defendant came by his house around 3:00 a.m. that morning because Nila was supposed to borrow his car. Defendant told Nila to drop him off somewhere and then Nila could use the car. Defendant drove the car when they left Nila's house; he was "weaving" while driving. He and Nila decided to switch places and they pulled over so Nila could drive. When they pulled over, Nila saw a sheriff's deputy park his vehicle, so defendant and Nila left with defendant still driving. Nila initially reported they continued driving, stopped at a gas station, and the sheriff's car pulled in and stopped them there. Later, in a second statement, Nila reported defendant pulled a short shotgun from under something on the rear seat and then threw it out of the sunroof of the car. Another officer, Paul Kirchoff, told Grogan he recovered a short-barreled shotgun with a pistol grip that was found by a citizen in that area and turned in.

After the presentation of evidence at the preliminary hearing, the prosecutor moved to strike count II (assault with a firearm in violation of § 245, subd. (a)(2)) and argued count IV was supported by Nila's statement to Detective Grogan that defendant tossed the shotgun in the industrial park before the traffic stop. With regard to the balance of the charges, the prosecutor asserted: "Although [Cynthia A.] testified today that she didn't see the defendant actually pulling the trigger, … a reasonable inference can be made that … the shot that sent Ricky Conway to the ground bloody … was made

4.

by the defendant. He was within two feet. There was no one else around. The defendant left immediately thereafter, and … he tossed the shotgun and it was later recovered. So a strong inference obviously can be made."

The court held defendant to answer on counts I and III, but held there was insufficient evidence to hold him to answer to count IV. The court stated there was no evidence of actual concealment; rather, at best, it was an "attempted concealment."

## PROCEDURAL HISTORY

In October 2012, the court held a change of plea hearing at which the parties explained they had reached an agreement. Defendant would "plead to a lesser of count 1 of voluntary manslaughter, 192(a), and that he unlawfully killed Ricky Conway … for the aggravated term of 11 years." Additionally, he would plead to "felon in possession of a firearm" for another eight months consecutive. He would also "admit the strike prior, and that … double[d] the term to 23 years, four months" Defendant affirmed he heard the agreement and it was what he wished to do. His counsel confirmed defendant would be pleading "no contest" and that this was a "*West* plea."

The court asked the parties if they stipulated there was a factual basis set forth in the preliminary hearing transcripts. Defense counsel responded, "Yes," and the prosecutor stated "we do so stipulate." The prosecutor also noted "because somebody might want to review this more briefly later, the essential allegation is [defendant] shot and killed [Conway]." In response, the court asked defense counsel if, "[f]or purposes of the plea," he so stipulated. Defense counsel responded affirmatively, "Yes, Your Honor." The court then asked defendant, "[Y]ou … understand that?" Defendant responded, "Yeah." Defendant also confirmed he understood the agreed-upon disposition was 23 years 4 months in state prison. Defendant then affirmed he understood the nature of the charges against him, and he pleaded no contest to voluntary manslaughter and felon in possession of a firearm.

In September 2022, defendant filed a petition for resentencing pursuant to section 1172.6 (former § 1170.95).[1] He averred a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory, murder under the natural and probable consequences doctrine, or other theory under which malice was imputed based solely on participation in the crime; at trial, he was convicted of murder, attempted murder, or manslaughter or accepted a plea offer in lieu of a trial at which he could have been convicted of murder or attempted murder; and he could not now be convicted of murder or attempted murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Sen. Bill No. 1437 (2017–2018 Reg. Sess.)). He also requested the appointment of counsel.

The court appointed defendant counsel and set a hearing. In their response to the petition, the People conceded the court could not resolve disputed facts at the prima facie stage, but argued, "The record of conviction shows that [defendant] was the actual and only killer of [Conway]. Witness testimony places only [defendant] with the victim prior to the murder and wanting to talk to him."

On January 18, 2023, the trial court held a hearing on defendant's petition. The court held defendant was ineligible for relief under section 1172.6, subdivision (a) because "petitioner was the actual killer of [Conway]." The court concluded defendant could not "meet the prima facie standard"; "[h]e was not prosecuted under the natural and probable consequence[]s theory, felony murder theory, or any other murder theory based on inputted [*sic*] malice." Accordingly, the court denied the petition.

---

[1]Effective June 30, 2022, the Legislature renumbered then effective section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute at that time, although prior changes had been implemented effective January 1, 2022. There is no dispute in this case that turns on any of these changes. For purposes of clarity, we refer to the statute as section 1172.6.

DISCUSSION

**I.      Senate Bill No. 1437 and Senate Bill No. 775**

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which became effective on January 1, 2019.  Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  It amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, §§ 2–3.)

Accordingly, section 188 now provides that, "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  *Malice shall not be imputed to a person based solely on his or her participation in a crime*."  (§ 188, subd. (a)(3), italics added.)  The change reflects the Legislature's intent that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea."  (Stats. 2018, ch. 1015, § 1, subd. (g).)

Additionally, section 189 previously stated, "All murder … which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree."  Senate Bill 1437 amended section 189, in part, by adding subdivision (e), which provides:

> "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶]

(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The legislation also added section 1172.6 (former § 1170.95), which provides a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.) Initially, this section permitted those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (Stats. 2018, ch. 1015, § 4, subd. (a).) In Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, the Legislature amended the language of section 1172.6 to expand the scope of the petitioning procedure to defendants convicted of attempted murder or manslaughter under a now prohibited theory. The legislation also clarified some of the procedural requirements in the statute.

Pursuant to amended section 1172.6, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner. (§ 1172.6, subd. (b)(3).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) If the petitioner has made such a showing that the petitioner is entitled to relief, the court "shall issue an order to show cause." (*Ibid.*) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*)

The trial court may look at the record of conviction to determine whether a petitioner has made a prima facie case for section 1172.6 relief, but the prima facie inquiry under subdivision (c) is limited. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "'[A] court should not reject the petitioner's factual allegations on credibility grounds

without first conducting an evidentiary hearing.' [Citation.]" (*Ibid.*) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.) "'[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Id.* at p. 971.) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."' [Citations.]" (*Ibid.*)

## II.    Analysis

Defendant contends he did not admit the truth of the evidence adduced at the preliminary hearing; rather, defense counsel stipulated the preliminary hearing transcript provided a factual basis for the plea. Relying on our court's opinion in *People v. Flores* (2022) 76 Cal.App.5th 974, 989, he argues because this stipulation did not constitute a binding admission to the truth of that testimony, it could not establish he was ineligible for relief as a matter of law. He further contends the testimony at the preliminary hearing did not necessarily preclude a factual scenario by which he could be eligible for relief under section 1172.6. He concedes there is a "strong inference of ineligibility to be drawn from the preliminary hearing transcript," but asserts there is still a possibility he could present evidence to establish he was prosecuted under a now invalid theory. The People disagree and assert the court can and should rely on the preliminary hearing transcript at the prima facie stage, and the court did not engage in factfinding to conclude defendant was ineligible for relief as a matter of law. Rather, they contend the evidence presented at the preliminary hearing establishes the only person who could have killed Conway was defendant, and relief is not available to an "actual killer." We conclude the

9.

record establishes defendant was the actual killer and, thus, he is categorically ineligible for relief.

As we have previously acknowledged, currently "Courts of Appeal are split on the import of the preliminary hearing transcript in determining whether a petitioner has made a prima facie case for resentencing under section [1172.6]." (*People v. Flores*, *supra*, 76 Cal.App.5th at p. 989.) And a stipulation that the preliminary hearing transcript provided a factual basis for the plea is not a """"binding admission for all purposes."""" (*Id.* at p. 991; see *People v. French* (2008) 43 Cal.4th 36, 50–51 ["A defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document, such as a police report or a preliminary hearing transcript"].)

However, stipulations made at a plea hearing are part of the record of conviction. (See *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1028 ["The trial court reviewed and relied upon the plea colloquy, which is part of the record of conviction"]; accord, *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1120.) Furthermore, a no contest plea admits all facts essential to the conviction. (See *People v. DeVaughn* (1977) 18 Cal.3d 889, 895 ["a plea of guilty admits all matters essential to the conviction"]; *In re Troy Z.* (1992) 3 Cal.4th 1170, 1180–1181 [*Devaughn* rule "applies after a defendant enters a plea of 'nolo contendere' ('no contest')"]; *People v. McPherson* (2001) 86 Cal.App.4th 527, 529, fn. 2 [defendant's "no contest plea admits all facts essential to the conviction"]; accord, *People v. Palacios* (1997) 56 Cal.App.4th 252, 257 ["'A plea of guilty admits every element of the offense charged …, all allegations and factors comprising the charge contained in the pleading….' [Citation.] The legal effect of a no contest plea is the same"]; *People v. Komatsu* (1989) 212 Cal.App.3d Supp. 1, 6 ["A plea of guilty or no contest admits all matters essential to the conviction, and the only matters reviewable on appeal are those based on constitutional, jurisdictional, or other grounds going to the legality of the proceedings"]; see also *People v. Turner* (1985) 171 Cal.App.3d 116, 126 ["by pleading

10.

guilty the defendant admits that he did that which he is accused of doing and he thereby obviates the procedural necessity of establishing that he committed the crime charged. In short, a guilty plea 'admits all matters essential to the conviction'"].) "In some cases, the record may reveal that a defendant admitted *more* than the elements of the offense charged, and such additional admissions may preclude relief under section [1172.6]." (*People v. Rivera* (2021) 62 Cal.App.5th 217, 234.)

Here, defense counsel stipulated for purposes of the plea that the "essential allegation" was that defendant "shot and killed" the victim. Defendant acknowledged his understanding of the stipulation and then pled no contest to voluntary manslaughter and felon in possession of a firearm. By pleading no contest to the charges with the understanding and acknowledgement that the "essential allegation" for purposes of the plea was that he shot and killed the victim, defendant's plea amounted to an admission of this allegation. Said differently, defendant's plea amounted to an admission of the facts essential to the conviction, one of which—as specifically alleged by the People here— was that he shot and killed the victim. Thus, the express statements and stipulations at the plea colloquy establish defendant was convicted under the theory he was the actual killer, rendering him ineligible for relief. (See *People v. Fisher, supra*, 95 Cal.App.5th at p. 1029 [defendant's ineligibility "was based on his express admissions at the plea colloquy"].)

Defendant's reliance on *People v. Flores, supra*, 76 Cal.App.5th 974 is misplaced. In *Flores*, the petitioner had previously pleaded no contest to second degree murder and admitted all enhancements and special allegations. (*Id*. at pp. 978, 982.) Years later, the trial court denied his petition for relief from his conviction pursuant to former section 1170.95 without issuing an order to show cause or holding an evidentiary hearing. (*Flores*, at p. 978.) The *Flores* court reversed, concluding the record of conviction did not establish the petitioner was categorically ineligible for relief. (*Id*. at pp. 986–992.) The *Flores* court held, in part, that the portion of the preliminary hearing transcript relied

11.

upon by the People did not establish the petitioner was categorically ineligible for relief at the prima facie stage under section 1172.6. (*Flores*, at p. 991.) Specifically, a deputy testified at the preliminary hearing that the petitioner had told him the codefendant, Bowman, shot and beat the victim and then the petitioner may have accidentally run over the victim twice when leaving the scene. (*Id.* at pp. 979–980.) In concluding such testimony was insufficient to establish the petitioner's ineligibility, the *Flores* court reasoned, the petitioner "did not admit the truth of this testimony and his stipulation that the [preliminary hearing] transcript provided a factual basis for the plea is not a ""binding admission for all purposes."" (*Id.* at p. 991.) Furthermore, "[e]ven if it was, this testimony standing alone, does not conclusively establish as a matter of law that petitioner was the actual killer, acted with intent to kill or actual malice, or was a major participant in an underlying crime who acted with reckless indifference to human life. It does not exclude the possibility that the petitioner was, or could have been, convicted under the imputed malice theories eliminated by Senate Bill No. 1437 (2017-2018 Reg. Sess.). To find petitioner ineligible for resentencing on this record would require judicial factfinding, which is impermissible at the prima facie stage." (*Flores*, at pp. 991–992.)

Here, unlike in *Flores*, defendant "admitted *more* than the elements of the offense charged, and such additional admissions … preclude relief under section 117[2.6]." (*People v. Rivera*, *supra*, 62 Cal.App.5th at p. 234.) That is, as discussed, the parties stipulated "the essential allegation" for purposes of the plea was that defendant shot and killed the victim. By pleading no contest, defendant admitted all matters essential to his convictions, necessarily admitting this "essential allegation." Thus, the express statements and stipulations at the plea colloquy establish defendant was convicted under a theory he (the sole defendant) shot and killed the victim, i.e., as the actual killer, rather than under a theory of imputed malice. Accordingly, he is categorically ineligible for relief. (See *People v. Fisher*, *supra*, 95 Cal.App.5th at p. 1029 [defendant's ineligibility "was based on his express admissions at the plea colloquy"]; accord, *People v. Lewis*,

*supra*, 11 Cal.5th at p. 971 ["'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner"'"].)

Accordingly, we affirm the order denying the petition.

## DISPOSITION

The order denying defendant's petition for resentencing pursuant to section 1172.6 is affirmed.